IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| JAVIER CAZARES, ET AL., § | |
|     Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:24-CV-045 |
| § | |
| JUAN MALDONADO, ET AL., § | |
|     Defendants. § | |

**DEFENDANTS BETANCOURT, BOGDANSKI, ELIZONDO, ESCALON,
KINDELL, MALDONADO & WILLIAMS' MOTION TO DISMISS**

**I.     MOTION**

Defendants Joel Betancourt, Richard Bogdanski, Crimson Elizondo, Victor Escalon, Christopher Kindell, Juan Maldonado, and Luke Williams (DPS Defendants) move to dismiss all claims asserted against them in Plaintiffs' First Amended Complaint,[1] pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

**II.    STATEMENT OF THE CASE**

This lawsuit concerns the horrific events of May 24, 2022, when a lone criminal took it upon himself to enter Robb Elementary School in Uvalde, Texas, and murder innocent victims. Plaintiffs are the parents and representatives of seventeen children who lost their lives as a result of this criminal episode, two additional children who survived, and four parents of survivors.[2] Defendants were at all times relevant to this suit employees

---

[1]     Doc. 34.

[2]     Id. at ¶¶ 29-61.

of the Texas Department of Public Safety (DPS), acting in the scope of their employment.[3] Plaintiffs assert the following causes of action against these Defendants, all pursuant to 42 U.S.C. § 1983: (1) Violation of the Fourteenth Amendment's guarantee of substantive due process (Special Relationship Theory); (2) Violation of the Fourteenth Amendment's guarantee of substantive due process (State Created Danger Theory); and (3) Violation of the Fourth Amendment (Unlawful Seizure).[4] The parents and representatives of deceased victims assert their capacity to sue and be awarded damages pursuant to Texas' Wrongful Death and Survival Statutes.[5] The surviving children and parents thereof assert a general right to personal injury damages.[6]

### III.   STATEMENT OF MATERIAL FACTS

At 11:29 a.m. on May 24, 2022, a young man with a plan to "shoot up" Robb Elementary School began to approach the building on foot, firing shots along the way.[7] Within a minute 911 was called and a broadcast went out for all units of the Uvalde Police Department to respond.[8] The shooter made his way around the perimeter of the school, shooting into several classrooms as he went.[9] Four minutes into his rampage, the shooter gained entry to Robb Elementary through an unlocked door and began shooting into

---

[3] Id. at ¶¶ 62-68.

[4] Id. at ¶¶ 363-409.

[5] Id. at ¶¶ 442-444; see also TEX. CIV. PRAC. & REM. CODE §§ 71.001-004; 71.021.

[6] Id. at ¶¶ 445-446.

[7] Id. at ¶¶ 171-172.

[8] Id. at ¶¶ 173-176.

[9] Id. at ¶¶ 181-185.

classrooms from the hallway.[10] Inside the classrooms, students and teachers attempted to stay down and hide.[11] The shooter entered Classrooms 111 and 112, which were connected, and opened fire, shooting several of the children and teachers; many fatally.[12]

At 11:35 a.m., Defendant Maldonado, a DPS Lieutenant, arrived outside Robb Elementary, followed a minute later by Defendant Elizondo, a DPS Trooper.[13] Inside the building at the time were Co-Defendants Arrendondo and Gonzales, who assumed positions in the hallway after taking fire.[14] Maldonado allegedly signaled through an entrance for officers in the hallway to wait until backup arrived.[15] While the shooter remained inside Classrooms 111 and 112, Maldonado allegedly conferred with officers outside the building while Defendant Bogdanski, a DPS Trooper, fretted about the dangerousness of the situation.[16] Elizondo and Maldonado allegedly entered the building at 11:41 and 11:43 a.m., respectively.[17]

As of 11:57 a.m., Defendant Williams, a DPS Special Agent, was outside one of the classrooms, while Defendant Betancourt, a DPS Captain, was *en route* and receiving

---

[10]   Id. at ¶¶ 187-188.

[11]   Id. at ¶¶ 190-191, 193.

[12]   Id. at ¶¶ 192, 194-195, 199-201, 205.

[13]   Id. at ¶ 206.

[14]   Id. at ¶¶ 214-220.

[15]   Id. at ¶ 225.

[16]   Id. at ¶ 276.

[17]   Id. at ¶¶ 250, 256.

updates from an Uvalde County Sheriff's Office personnel.[18] At 12:09 p.m., Betancourt texted Defendant Escalon, a DPS Regional Director, updates on possible injuries and a plan to wait for additional resources rather than breaching the occupied classrooms.[19] Betancourt arrived on scene at 12:30 p.m.[20]

At 11:32 a.m. on May 24, 2022, Defendant Kindell, a Texas Ranger, was contacted at his home by the Chief Investigator of the Uvalde County District Attorney.[21] Kindell allegedly "began acting in a supervisory capacity upon receiving the 11:32 call," made contact with a Uvalde Police Department Sergeant on scene at Robb Elementary, and allegedly "indicated that it was acceptable to wait until more resources arrived before engaging the Shooter."[22] Kindell arrived on scene at 11:55 a.m., and entered the building at 11:57.[23] He then assisted children and a teacher out of an exterior window, ordered available troopers to assist with crowd control, and summoned aircraft assets.[24] After having been on scene for approximately 28 minutes, Kindell "plann[ed] to negotiate with the Shooter."[25]

---

[18]   Id. at ¶¶ 284-285.

[19]   Id. at ¶ 297.

[20]   Id. at ¶ 322.

[21]   Id. at ¶ 231.

[22]   Id. at ¶¶ 234, 237.

[23]   Id. at ¶¶ 281, 283.

[24]   Id. at ¶ 289, 293, 295.

[25]   Id. at ¶ 317.

At 12:48 p.m., Defendant Betancourt allegedly radioed, "The team that's gonna breach needs to stand by," and one minute later a U.S. Border Patrol tactical team entered Classroom 111 and killed the shooter.[26]

## IV. ARGUMENT

### A. Failure to Plead/Lack of Standing

#### 1. All Plaintiffs

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings in all federal lawsuits contain "a short and plain statement of the claim showing that the pleader is entitled to relief …" The pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[27] A plaintiff's obligation under this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[28] Allegations that offer only the possibility that a defendant acted unlawfully, or facts merely consistent with liability, do not demonstrate entitlement to relief.[29]

Vicarious liability is inapplicable to § 1983 suits, which means that a plaintiff must show that each defendant, through that defendant's own individual actions, violated the Constitution.[30] Individuals in a supervisory role may only be held liable where they are personally involved in the constitutional deprivation, or where there is "a sufficient causal

---

[26] Id. at ¶¶ 327-328.

[27] Conley v. Gibson, 355 U.S. 41, 47 (1957).

[28] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[29] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[30] Id. at 677.

connection between the supervisor's wrongful conduct and the constitutional violation."[31] Liability demands demonstration of a supervisory defendant's "overt personal participation" in the events giving rise to the claim.[32]

Plaintiffs' allegations against the DPS Defendants do not come close to stating any claim for liability under § 1983. Defendants Maldonado, Elizondo, and Williams are accused of merely being present at the scene and "contain[ing] the Shooter."[33] Defendant Bogdanski is accused of making a remark about the dangerousness of the situation.[34] Defendant Betancourt is accused of making a radio call which allegedly delayed the breach of the classrooms by one minute.[35] Defendant Kindell is accused of being in a supervisory role and performing poorly therein.[36] Defendant Escalon is accused of receiving updates.[37]

Plaintiffs fail the basic test for stating any claim, especially when viewed through the lens of qualified immunity. There is no allegation that any of the DPS Defendants personally violated any constitutional rights, but only the implication that Defendants could have acted differently to mitigate violations perpetrated by a private third party. Plaintiffs'

---

[31] Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

[32] Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008) (quoting Thompkins, 828 F.2d at 304).

[33] Doc. 34 at ¶¶ 206-207, 224-226, 255-265, 276, 280, 284, 325, 329.

[34] Id. at ¶ 276.

[35] Id. at ¶¶ 327, 331.

[36] Id. at ¶¶ 234, 237, 291-296, 317, 329.

[37] Id. at ¶¶ 297, 332.

claims are simply "unadorned, the defendant-unlawfully-harmed-me" accusations, which cannot form the basis of constitutional claims.[38] All claims must therefore be dismissed.

### 2. Bystander Claims

Plaintiffs Miguel Cerillo, Abigale Veloz, Jose Martinez, and Kassandra Chavez appear as next friends of minor children who suffered injuries on May 24, 2022.[39] They also, however, "assert claims as bystanders for their own mental anguish damages."[40] Aside from being poorly pled, there is no such thing as a § 1983 "bystander" action premised upon witnessing, but not actually being subject to, constitutional violations.[41] "[T]here is no constitutional right to be free from witnessing … police action," nor does § 1983 impose liability "for violations of duties of care arising out of tort law."[42]

Plaintiffs Cerillo, Veloz, Martinez, and Chavez lack any standing to bring suit in their individual capacities. This Court lacks subject matter jurisdiction over their bystander claims, and they must be dismissed from this lawsuit.

### B. Qualified Immunity

### 1. Standard

Defendants assert their entitlement to qualified immunity. Qualified immunity shields government officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[38] Iqbal, 556 U.S. at 678

[39] Doc. 34 at ¶¶ 33-34, 56-57, 445-446.

[40] Id. at ¶¶ 445-446.

[41] Harmon v. City of Arlington, 16 F.4th 1159, 1168 (5th Cir. 2021).

[42] Grandstaff v. Borger, 767 F.2nd 161, 172 (5th Cir. 1985).

have known."[43] Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.[44] Courts are required to undertake a two-step analysis of the issue of qualified immunity: (1) whether a constitutional right was violated, and (2) whether the allegedly violated right was "clearly established."[45] This analysis may be performed in any order, and failure to establish either element is dispositive in favor of qualified immunity.[46] Ultimately, government officials are entitled to qualified immunity if their conduct was objectively reasonable in light of the legal rules that were clearly established at the time of their actions.[47]

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[48] The Supreme Court does not necessarily require a controlling case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate."[49] This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."[50] The specificity of this inquiry is especially important in Fourth

---

[43]     Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[44]     Malley v. Briggs, 475 U.S. 335, 341 (1986).

[45]     McClendon v. City of Columbia, 305 F.3d 314, 322-23 (5th Cir. 2002).

[46]     Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 201-2 (2001).

[47]     McClendon, 305 F.3d at 323.

[48]     Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks, alterations and citations omitted).

[49]     Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

[50]     Saucier, 533 U.S. at 201.

Amendment cases, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts."[51]

The Supreme Court has repeatedly counseled that constitutional law is clearly established for qualified immunity purposes in only two ways: Supreme Court precedent or a "robust consensus of cases of persuasive authority" across the Courts of Appeals.[52] By either path, the relevant precedent must "squarely govern" the facts at hand.[53]

### 2. Substantive Due Process – Special Relationship

As a threshold matter, Plaintiffs cannot pursue causes of action under the Fourth Amendment *and* the Due Process Clause of the Fourteenth Amendment arising from the same facts. The Supreme Court has been clear that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims."[54] The Fourth Amendment explicitly applies to pretrial deprivations of liberty, to include "seizures."[55] Conversely, a substantive due process claim against police can only apply in the *absence* of a Fourth Amendment

---

[51] Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Saucier, 533 U.S. at 205).

[52] al-Kidd, 563 U.S. at 742; see also City & County of San Francisco v. Sheehan, 575 U.S. 600, 617 (2015); Taylor v. Barkes, 575 U.S. 822, 826 (2015); see also Rivas-Villegas v. Cortesluna, 595 U.S. 1, 6 (2021) (casting doubt on, but not resolving, whether Circuit precedent alone can clearly establish law for the purposes of § 1983).

[53] Mullenix, 577 U.S. at 13-14 (citing and quoting Brosseau v. Haugen, 543 U.S. 194, 201 (2004)).

[54] Albright v. Oliver, 510 U.S. 266, 273 (1994) (cleaned up).

[55] Id. at 274; see also Graham v. Connor, 490 U.S. 386, 394-95 (1989).

seizure.[56] Plaintiffs have affirmatively pled that all of the children represented in this matter were "seized" within the meaning of the Fourth Amendment."[57] This allegation axiomatically renders any attempt to state a substantive due process claim based on the same facts failed, and dismissal of such claims is required.

Assuming a substantive due process cause of action were not automatically canceled by the presence of Fourth Amendment allegations, Plaintiffs still have failed to state any such claim. Generally, the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."[58] "[F]ailure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[59] The Fifth Circuit recognizes that this otherwise categorical rule is subject to the "very limited exception" where the state has created a "special relationship" with the plaintiff.[60] Such a "special relationship" exists only "when the State takes a person into its custody and holds him there against his will," and thereby "assume[s] some responsibility for his safety and general well-being."[61]

---

[56] County of Sacramento v. Lewis, 523 U.S. 833, 842-45 (1998).

[57] Doc. 34 at ¶ 407.

[58] DeShaney v. Winnebago Cnty. Dept. of Soc. Serv., 489 U.S. 189, 195 (1989).

[59] Id. at 197.

[60] Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849, 855-56 (5th Cir. 2012) (citing DeShaney, 489 U.S. at 199-200).

[61] Id.

The Fifth Circuit has recognized that this "special relationship" exists in only three circumstances: (1) inmates, (2) persons involuntarily committed to an institution, and (3) children in foster care.[62] The Fifth Circuit has explicitly held that "a public school does not have a special relationship with a student that would require the school to protect the student from harm at the hands of a private actor."[63] There certainly has never been a recognition of any "special relationship" between schoolchildren and *police*, and failed police intervention does not create a "special relationship" *ad hoc*.[64]

Plaintiffs have failed to plead any recognized "special relationship" which would trigger Fourteenth Amendment protections in these circumstances and expose the DPS Defendants to liability. Absent any "special relationship," Count I must be dismissed for failure to state a claim.

### 3. Substantive Due Process – State-Created Danger

Despite repeated opportunities to adopt a state-created danger theory of liability for § 1983 claims, the Fifth Circuit has consistently and explicitly declined to do so.[65] This cause of action simply does not exist in the Fifth Circuit. Count II must be dismissed for failure to state a claim.

### 4. Unlawful Seizure

A "seizure" within the meaning of the Fourth Amendment occurs "only when there is a governmental termination of freedom of movement *through means intentionally*

---

[62] Id. at 856.

[63] Id.

[64] See Cook v. Hopkins, 795 Fed. App'x 906, 912-14 (5th Cir. 2019).

[65] Doe v. Columbia-Brazoria Indep. Sch. Dist., 855 F.3d 681, 688 (5th Cir. 2017).

*applied.*⁶⁶ Fourth Amendment violations do not include a loss of life due to police negligence.⁶⁷ The Supreme Court has made clear that a person is seized only when the police take action with intent to terminate a person's freedom of movement, and the *targeted* person's freedom of movement is terminated by the intentional action "put in place in order to achieve that result."⁶⁸

Relying on Brower, circuit courts have consistently refused to consider hostages and bystanders "seized" by police, even when such innocents are killed *by* police, because the police intent was to seize the criminal perpetrator and not the hostages.⁶⁹ Recently in the Fifth Circuit, in an effort to rescue two kidnapped individuals, an FBI Agent broke a window and pointed his gun through the opening.⁷⁰ The Agent negligently discharged his weapon, killing one of the kidnap victims.⁷¹ Because the Agent's actions were motivated

---

<sup>66</sup>   Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original).

<sup>67</sup>   Gorman v. Sharp, 892 F.3d 172, 174-75 (5th Cir. 2018) (citing Watson v. Bryant, 532 Fed. App'x 453, 457 (5th Cir. 2013) and Young v. City of Killeen, 775 F.2d 1349, 1353 (5th Cir. 1985)).

<sup>68</sup>   Brower, 489 U.S. at 596-98.

<sup>69</sup>   See e.g. Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 794-96 (1st Cir. 1990) (hostage was not "seized" when police shot him while firing at a suspect's getaway car); Medeiros v. O'Connell, 150 F.3d 164, 167-69 (2nd Cir. 1998) (no Fourth Amendment violation for a hostage struck by errant police bullet); Rucker v. Harford Cnty, Md., 946 F.2d 278, 281 (4th Cir. 1991) (no Fourth Amendment seizure for an innocent onlooker killed by police firing on a suspect vehicle); Claybrook v. Birchwell, 199 F.3d 350, 355, 359 (6th Cir. 2000) (innocent victim struck during a police shootout was not seized because the police gunfire was aimed at her father-in-law; Childress v. City of Arapahoe, 210 F.3d 1154, 1156-57 (10th Cir. 2000) (hostages were not "seized," because the officers intended to restrain the vehicle and the fugitives therein, not the hostages).

<sup>70</sup>   Pearce v. Doe, 849 Fed. App'x 472, 473-74 (5th Cir. 2021).

<sup>71</sup>   Id. at 474.

by an intent to end the hostage situation, and not to fire upon the hostage, there was no Fourth Amendment "seizure."[72]

In this case, it is undisputed that Defendants' actions, regardless of their advisability or effectiveness, were intended to terminate the freedom of the *shooter's* movement on May 24, 2022, and not his victims. Plaintiffs have failed to state any claim under a Fourth Amendment theory and Count III must therefore be dismissed.

### 5. Clearly Established Law

Plaintiffs thus far make no effort whatsoever to demonstrate that the law concerning Defendants' actions on May 24, 2022, is clearly established for qualified immunity purposes. Qualified immunity is not mentioned in the complaint, and Plaintiffs merely claim in conclusory fashion on two occasions that Defendants have violated "clearly established rights."[73]

After a good-faith search, Defendants have located no settled law that would have placed Defendants on notice that their individual actions in this specific factual scenario were unconstitutional on May 24, 2022. Authority from the Supreme Court, Fifth Circuit, and numerous other circuits cited above makes clear that were the law to be settled, it would be in Defendants' favor. Plaintiffs cannot overcome Defendants' assertion of qualified immunity and this lawsuit must be dismissed.

---

[72]  Id. at 475.

[73]  Doc. 1 at ¶¶ 407, 413.

## V.    PRAYER

Plaintiffs have failed to demonstrate either a constitutional violation by these Defendants on May 24, 2022, or that the law applicable to the facts alleged was clearly established at the time of the incident. Plaintiffs cannot overcome Defendants' assertion of qualified immunity. Defendants respectfully request that all claims asserted against them be dismissed.

        Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 24065628

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2157 (Phone No.)
(512) 370-9314 (Fax No.)

**ATTORNEYS FOR DPS DEFENDANTS**

## CERTIFICATE OF SERVICE

I, **CHRISTOPHER LEE LINDSEY**, Assistant Attorney General, do hereby certify that a true and correct copy of the foregoing has been served on all parties by the Court's electronic noticing system, on this the 16th day of July, 2024.

/s/CHRISTOPHER LEE LINDSEY
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General