**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | | |
|---|---|---|
| **JAVIER CAZARES,** *Individually as* | § | |
| ***Wrongful Death Beneficiary of J.J.C.,*** | § | |
| ***Deceased Minor, et al*** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:24-cv-000045-AM** |
| | § | |
| **JUAN MALDONADO,** *et al* | § | |
| **Defendants.** | § | |

## DEFENDANT PEDRO "PETE" ARREDONDO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendant Pedro "Pete" Arredondo, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this Motion to Dismiss the claims brought against him in Plaintiffs' First Amended Complaint for Damages (Dkt. 34). In support thereof, Arredondo respectfully shows as follows:[1]

## SUMMARY

Defendant Arredondo is entitled to dismissal of Plaintiffs' federal claims. First, the Parent Plaintiffs lack standing individually as parents to present claims under 42 U.S.C. § 1983. Second, Plaintiffs fail to allege facts that are sufficient to state a claim for relief regarding Arredondo. Specifically, the Fourteenth Amendment substantive due process claim is based upon legal theories—special relationship and state-created danger—that have been soundly rejected by the

---

[1] Pursuant to Federal Rule of Civil Procedure 12(a)(4), Chief Arredondo is not required to file an answer until fourteen (14) days after the Court rules on a motion filed pursuant to Rule 12. *See also Robin v. City of Frisco*, No. 4:16-cv-576, 2017 WL 2986315, *1 (E.D. Tex. Jul. 13, 2017). This extension applies regardless of whether the motion relates to some or all of the claims alleged in Plaintiffs' complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1346 (3d ed. 2006).

Fifth Circuit. Likewise, Plaintiffs' claims against Arredondo for a Fourth Amendment unlawful seizure fail on their face since any seizure was created by the Shooter as opposed to any police presence. Consequently, Arredondo is entitled to qualified immunity since rejected legal theories cannot be clearly established law. Third, Plaintiffs' claims against Arredondo in his official capacity are duplicative of Plaintiffs' claims against the Uvalde Consolidated School District, Arredondo's employer, and must be dismissed. Fourth, Plaintiffs' claims for exemplary damages against Defendant Arredondo are without merit and should be dismissed. Finally, all discovery should be stayed in this matter until the issue of qualified immunity is resolved.

## **BACKGROUND**

### A.  **Plaintiffs' Relevant Allegations Regarding Arredondo.**

Plaintiffs allege that Arredondo and other officers entered the building around 11:35 a.m. and "saw and smelled the gun smoke and drywall cloud." Dkt. 34 at ¶203. Plaintiffs further allege that "TXDPS … arrived on scene within sixty seconds of the Shooter entering the West building." Dkt. 34 at ¶206. Plaintiffs allege that a TXDPS "began acting in a supervisory capacity … [at] 11:32." Dkt. 34 at ¶234. Plaintiffs describe Arredondo as seeing "the bullet holes in the walls and the 5.56 NATO rounds on the floor." Dkt. 34 at ¶218. Plaintiffs allege that "5.56 NATO rounds from the Shooter's AR-15 had penetrated the classroom walls into the hallway." Dkt. 34 at ¶272.

Plaintiffs admit that as the law enforcement officers "approached the classrooms, the Shooter continued firing [and] [a]n officer suffered a graze on his ear from shrapnel and another officer received a minor graze wound." Dkt. 34 at ¶219. After these injuries, the law enforcement officers (including the UCISD-PD officers) "stopped and retreated" and "took positions at either end of the hallway, 'containing' the Shooter so he could not escape from Classrooms 111 and 112." Dkt. 2 at ¶¶221-22. Plaintiffs allege a TXDPS officer "signaled that officers in the hallway

should wait because 'DPS is sending people.'" Dkt. 34 at ¶225. Plaintiffs allege that "[d]uring the active shooter incident, the TXDPS Defendants continued to act on their own authority. They did not defer to Chief Arredondo as incident commander, and he did not consider himself to assumed incident command." Dkt. 34 at ¶333. Plaintiffs allege that Arredondo attempted to negotiate with the Shooter. Dkt. 34 at ¶¶279, 287, 316, 318. A TXDPS Ranger "plan[ed] to negotiate with the Shooter" after having been on scene for approximately 28 minutes. Dkt. 34 at ¶317. Meanwhile, officers evacuated children and a teacher from some classrooms in the West building. Dkt. 34 at ¶289, 292.

Plaintiffs claim that "TXDPS's role is to provide public safety capabilities that smaller law enforcement agencies in Texas either do not or cannot sustain … including mass attacks … like the active shooter incident at Robb Elementary School on May 24, 2022." Dkt. 34 at ¶208. Plaintiffs assert that "Ninety-one TXDPS officers responded to Robb Elementary School on May 24, 2022, while the UCISD-PD had five on scene." Dkt. 34 at ¶19. Plaintiffs further allege that "[t]he leadership, training, and experience of Defendant TXDPS officers far outstripped the experience and abilities of [Defendant Arredondo] and everyone on scene knew it." Dkt. 34 at ¶19. Plaintiffs further allege that the TXDPS Rangers "had the authority to exercise de facto supervisory authority over TXDPS, UPD, UCISD-PD and County law enforcement officers." Dkt. 34 at ¶234.

Plaintiffs allege that Arredondo and other law enforcement officers "rejected ALERRT doctrine." Dkt. 34 at ¶221. "Officers prolonged the lockdown looking for keys (which they did not need because the door to Classroom 111 was not locked)." Dkt. 34 at ¶304, 319. Plaintiffs allege Arredondo "said he 'need[ed] lots of firepower' because of the Shooter's AR-15." Dkt. 34 at ¶275. Plaintiffs allege that Arredondo called dispatch and said, "'we don't have enough fire power right now it's all pistol and [the Shooter] has an AR15.'" Dkt. 34 at ¶229. "Officers reasoned there was

'no way' to take action, and the only thing they could do was wait … and try to get something that had better coverage where we could actually stand up to him." Dkt. 34 at ¶274. Moreover, Plaintiffs allege that "[o]fficers did not want to move forward until they had rifle-rated shields." Dkt. 34 at ¶275. Plaintiffs allege that under these circumstances that even a TXDPS Ranger "indicated that it was acceptable to wait until more resources arrived before engaging the Shooter." Dkt. 34 at ¶237.

Outside, Plaintiffs allege that parents "tried to break through the law enforcement perimeter, [but] law enforcement officers, including TXDPS and Uvalde County Sheriff's Office ("UCSO") officers stopped them." Dkt. 34 at ¶263. "A total of 376 law enforcement officers had responded to the active shooter incident at Robb Elementary School: [including Arredondo and four other UCISD-PD officers]." Dkt. 34 at ¶362.

**B.  Plaintiffs' Causes of Action.**

Plaintiffs assert claims against Arredondo in his individual and official capacities under 42 U.S.C. §1983 for alleged violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments. Dkt. 34 at ¶¶363-422. First, Plaintiffs assert a claim against Arredondo in his individual capacity under the Fourteenth Amendments for substantive due process/special relationship. Dkt. 34 at ¶¶363-392. Second, Plaintiffs assert a claim against Arredondo in his individual capacity under the Fourteenth Amendments for "State Created Danger." Dkt. 34 at ¶¶393-405. Third, Plaintiffs assert a claim against Arredondo in his individual capacity under the Fourth Amendment for unlawful seizure. Dkt. 34 at ¶¶406-409. Fourth, Plaintiffs assert a claim against Arredondo in his official capacity under the Fourth and Fourteenth Amendments for "failure to ensure compliance with universally accepted standards." Dkt. 34 at ¶¶410-417. Finally, Plaintiffs assert a claim against Arredondo in his official capacity under the Fourteenth

Amendment for "special relationship and state created danger, failure to ensure compliance with universally accepted standards." Dkt. 34 at ¶¶418-422. Plaintiffs seek recovery from Arredondo for compensatory economic damages; punitive and exemplary damages; reasonable attorney's fees; and costs of suit and pre- and post-judgment interest. Dkt. 34 at ¶451.

## ARGUMENT AND AUTHORITIES

### A. The Standard for a Motion to Dismiss.

#### 1. Federal Rule of Civil Procedure 12(b)(1).

A court must dismiss a claim for which it lacks jurisdiction. FED. R. CIV. P. 12(b)(1). A claim should be dismissed for lack of subject-matter jurisdiction "when the court does not have statutory or constitutional power to adjudicate the case." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the Rule 12(b)(1) challenge should be first considered. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)). The party asserting jurisdiction bears the burden of proof for a motion under Rule 12(b)(1). *Ramming*, 281 F.3d at 161.

#### 2. Federal Rule of Civil Procedure 12(b)(6).

To survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A formulaic recitation of the elements of a cause of action will not suffice. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), the court does not, "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)).

The Court need only accept as true the "well pleaded" facts in a complaint; to be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp*., 14 F.3d 1061, 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990). A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). A conclusory allegation is one which lacks factual support. *E.g.*, *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 911 (5th Cir. 2019). The Court should dismiss a complaint if it lacks an allegation regarding an element of a cause of action. *Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

### 3. The Plaintiffs' Burden to Defeat Qualified Immunity.

"Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). Qualified immunity "adds a wrinkle" to §1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020). "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id*. (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). To defeat qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Morgan*, 659 F.3d at 371; *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Courts have discretion in deciding which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**B.  The Court Lacks Jurisdiction Over Parent Plaintiffs' Individual Claims Because They Lack Standing.**

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Accordingly, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

To establish standing under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "The injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Plaintiffs claim the "Parent Plaintiffs" are "suing in their individual capacities." Dkt. 34 at ¶61. Javier Cazares; Santa Gloria Cazares; Kimberly Garcia; Rachel Garza; Miguel Cerrillo; Abigale Veloz; Ana Rodriguez; Jerry Mata; Veronica Mata; Jessie Rodriguez; Deanna Gornto; Maria Magdalene Garcia; Juan Julian Bravo; Veronica Luevanos; Jacob Silguero; April Elrod; Kimberly Rubio; Felix Rubio; Jose Luevanos; Christina Luevanos; Jennifer Lugo; Steven Garcia; Alyssa Rodriguez; Evadulia Orta; Mandy Marie Renfro; David Balmer; Eli Torres; Jose Martinez; Kassandra Chavez; Vincent Salazar, III; and Melinda Alejandro purport to assert claims individually against Arredondo based on injuries to their relatives. Dkt. 34 at ¶¶29-59.

The Parent Plaintiffs lack individual standing under §1983 because they expressly base their §1983 claims on allegations that Arredondo and the other law enforcement officers violated the deceased and injured minors' constitutional rights as opposed to their own constitutional rights.[2] Parent Plaintiffs are asserting that their individual constitutional rights were violated when "[o]fficers physically restrained [Parent Plaintiffs] … from getting closer to the school." Dkt. 34 at ¶261. Parent Plaintiffs identify "at least two TXDPS Doe Defendant Officers" as the alleged officers restraining the parents. Dkt. 34 at ¶264. Parent Plaintiffs further allege that Defendant Captain Joel Betancourt ordered all TXDPS personnel to be on the perimeter and not enter the building. Dkt. 34 at ¶269. However, Arredondo is clearly not one of the officers restraining any of the Parent Plaintiffs since Arredondo was inside the building and the alleged physical restraints occurred outside. *Friends of the Earth, Inc.*, 528 U.S. at 180-81 (the injury must be "fairly traceable" to the defendant's conduct). Consequently, the Parent Plaintiffs lack standing to pursue individual claims against Arredondo under §1983.

## C. Arredondo is Entitled to Qualified Immunity.

To defeat qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott*, 550 U.S. at 377; *Bevill v. Fletcher*, 26 F.4th 223, 227 (5th Cir. 2022). Under the second prong, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that

---

[2] *E.g.*, *Gregory v. McKennon*, 430 Fed. App'x 306, 310 (5th Cir. 2011) (plaintiff lacked standing to pursue a §1983 claim based on violations of others' rights, citing *Lujan,* 504 U.S. at 560 n.1 for the proposition that a plaintiff lacks Article III standing where the alleged injury does not affect the plaintiff in a personal and individual way); *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) ( "A third party may not assert a civil rights claim based on the civil rights violations of another individual."); *Covarrubias v. Wallace*, 907 F. Supp. 2d 808, 813 (E.D. Tex. 2012) (plaintiff "cannot raise claims regarding alleged violations of other persons' rights).

what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam).

### 1. Plaintiffs' Reliance on the Special Relationship is Not Clearly Established.

The Fifth Circuit has recognized that schoolchildren have a liberty interest in their bodily integrity which is protected by the Due Process Clause. *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017) (citing *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 853 n.2 (5th Cir. 2012) (en banc)); *see DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). But the "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," unless the state has created "a 'special relationship' with a particular citizen, requiring the state to protect him from harm." *Covington*, 675 F.3d at 855-56 (quoting *Deshaney*, 498 U.S. at 199–200). Plaintiffs' allegations and legal theories are insufficient to defeat Arredondo's entitlement to qualified immunity.

The Fifth Circuit has emphatically and categorically rejected the special-relationship theory in the public-school context. *Covington*, 675 F.3d at 857 ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors."); *see also Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 522, 529 (5th Cir. 1994) (finding no special relationship between a high school and a student fatally wounded by a gunshot fired in the school parking lot after a school dance); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 199, 202-03 (5th Cir. 1994) (finding no special relationship between a high school and a student shot and killed in the school hallway during the school day by a boy who was not a student but had gained access to the school); *Doe v. San Antonio Indep. Sch. Dist.*, 197 Fed. App'x 296, 298-301 (5th Cir. 2006); *Teague v. Tex. City*

*Indep. Sch. Dist.*, 185 Fed. App'x 355, 357 (5th Cir. 2006). Accordingly, Plaintiffs' claims cannot rest on the special-relationship theory, as it has been categorically rejected and, thus, cannot defeat Arredondo's entitlement to qualified immunity. *See Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022). The Special Relationship theory is not clearly established law in the context of school law and school law enforcement. Arredondo is, therefore, entitled to qualified immunity as to Plaintiffs' first cause of action.

**2.  The State-Created Danger Theory is not Clearly Established in the Fifth Circuit.**

Plaintiffs point to the state-created danger theory because this case involves a criminal act by a private third party who was trespassing on school property. The problem for Plaintiffs is that "the Fifth Circuit has never recognized th[e] 'state-created-danger' exception." *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020). In fact, the Fifth Circuit has repeatedly declined to recognize the state-created danger theory of liability. *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020); *see also, e.g., Shumpert v. City of Tupelo*, 905 F.3d 310, 324 n.60 (5th Cir. 2018) ("[T]he theory of state-created danger is not clearly established law." (listing cases)); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the 'state-created danger' theory of liability."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("But this circuit has not adopted the state-created danger theory."); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."); *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented.").

The Fifth Circuit recently reaffirmed that "the Fifth Circuit has never recognized th[e] 'state-created-danger exception.'" *Fisher v. Moore*, 62 F. 4th 912, 916 (5th Cir. 2023). In *Fisher*,

the Fifth Circuit reiterated that "[t]his circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule. And a *never*-established right cannot be a *clearly* established one." *Id.*; *see also Walker v. Livingston*, 381 Fed. App'x 477, 479-80 (5th Cir. 2010) ("[T]his court has held that the state created danger theory is 'not clearly established law within this circuit such that a § 1983 claim based on this theory could be sustained'"). The *Fisher* court went on to explain that "[i]n our published, and thus binding, caselaw, '[w]e have repeatedly declined to recognize the state-created danger doctrine.'" *Fisher*, 62 F.4th at 916. Consequently, Plaintiffs cannot demonstrate a clearly established substantive due process right on the facts they allege. *See Keller*, 952 F.3d at 227. Arredondo is, therefore, entitled to qualified immunity as to Plaintiffs' second cause of action.

### 3. Plaintiffs' Claim for Unlawful Seizure Under the Fourth Amendment, Likewise, Fails.

As an initial matter, there was no seizure by Arredondo or by any of the law enforcement officers. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' [T]he 'seizure' of a 'person,' which can take the form of 'physical force,' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry* v. *Ohio*, 392 U. S. 1, 19, n. 16 (1968)); *see also California v. Hodari D.*, 499 U.S. 621 (1991). "At the adoption of the Fourth Amendment, a 'seizure' was the 'act of taking by warrant' or 'of laying hold on suddenly.'" *Torres*, 141 S. Ct., at 995 (citation omitted).

"A seizure requires the use of force *with intent to restrain*. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy the rule." *Torres*, 141 S. Ct. at 998 (emphasis in original) (citation omitted). "[T]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain…." *Id.* (emphasis in original). "Nor does the

seizure depend on the subjective perceptions of the seized person." *Id.* at 999. Plaintiffs admit that Arredondo and the other law enforcement officers sought additional equipment, sought to remove children from surrounding classrooms, and sought to contain *the Shooter*. There was no intent on Arredondo's part to restrain the Plaintiffs.[3]

In determining whether an officer makes a sufficient show of authority, the court considers whether, in the light of 'all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Wright*, 57 F.4th 524, 531 (5th Cir. 2023) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, (1980)). "When a person 'has no desire to leave for reasons **unrelated to the police presence**, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter'" *Id.* (quoting *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021)). Arredondo made no show of authority to the teachers and students in the classrooms. It was the Shooter, not Arredondo and the other law enforcement officers, who was restricting the Plaintiffs' movements. The most Plaintiffs allege Arredondo did was attempt to negotiate with the Shooter and, along with other officers, contained the Shooter, but this was not a seizure of the Plaintiffs. Additionally, Plaintiffs' allegations and arguments about some parents being restrained by unidentified law enforcement officers, and not Arredondo specifically, are insufficient to state a claim against Arredondo under §1983 because individual liability under §1983 requires a showing of individual causation. *E.g.*, *Martinez v. City of N. Richland Hills*, 846 Fed. App'x 238, 243-44 (5th Cir. 2021); *Jones v. Hosemann*, 812 Fed. App'x

---

[3] To the extent Plaintiffs are asserting that Arredondo and the other law enforcement officers on scene acted with negligence or some other standard their claims fail. The Fifth Circuit has explained that "precedents foreclose liability under the Fourth Amendment in the absence of intentional conduct." *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (citing *Browerv. County of Inyo*, 489 U.S. 593, 596-97 (1989)).

235, 239 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). Consequently, there was no seizure by Arredondo.

Assuming *arguendo* that there was a seizure (there was not), Plaintiffs' complaint that the encounter took too long so as to rise to the level of a constitutional violation is equally without merit. Qualified immunity is overcome only if, at the time and under the circumstances of the challenged conduct, *all* reasonable officers would have realized the conduct was prohibited by the federal law on which the suit is founded. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). The question is whether a reasonable officer **could** have believed that the actions of the defendant officer were lawful in light of clearly established law and the information the officer possessed at the time. *Anderson*, 483 U.S. at 641. If reasonable officers could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The legal principle in question must clearly prohibit the specific conduct of the official in the particular circumstances that were confronting the official. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

But Plaintiffs have clearly pleaded that a reasonable officer could have believed any delay in entering the classrooms was lawful in light of clearly established law and the information Arredondo possessed at the time. Plaintiffs allege that under these circumstances even a highly skilled and better trained TXDPS Ranger "indicated that it was acceptable to wait until more resources arrived before engaging the Shooter." Dkt. 34 at ¶237 Plaintiffs allege that Arredondo attempted to negotiate with the Shooter. Dkt. 34 at ¶¶279, 287, 316, 318. Likewise, Plaintiffs allege that a TXDPS Ranger "plan[ed] to negotiate with the Shooter" after having been on scene for

approximately 28 minutes. Dkt. 34 at ¶317. Plaintiffs allege that Arredondo and the other law enforcement officers called for additional resources. Dkt. 34 at ¶¶229, 275. "Officers reasoned there was 'no way' to take action, and the only thing they could do was wait … and try to get something that had better coverage where we could actually stand up to him." Dkt. 34 at ¶274. Moreover, Plaintiffs allege that "[o]fficers did not want to move forward until they had rifle-rated shields." Dkt. 34 at ¶275. Plaintiffs allege that better trained and more skilled officers from better equipped and funded agencies than Arredondo took similar actions to Arredondo. Under such pleadings there is no way Plaintiffs can assert that *all* reasonable officers would have realized that Arredondo's conduct was prohibited by the federal law on which the suit is founded.

It is the plaintiff's burden to plead and prove specific facts overcoming qualified immunity. *Elliot v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To do so, a claimant "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Under the pleading standard required to overcome qualified immunity, Plaintiffs' conclusory and speculative Fourth Amendment allegations fail to state a claim. Arredondo is, therefore, entitled to qualified immunity as to Plaintiffs' third cause of action.

### D. Plaintiffs' Official Capacity Claims Against Arredondo Should be Dismissed as Redundant.

Suing a governmental official in his official capacity is merely another way of pleading an action against the entity of which that officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Courts dismiss redundant claims when they are asserted against both an individual in his or her official capacity and the entity for which the official works. *E.g., Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (upholding the dismissal of claims against officers in their official capacity which were duplicative of the

claims against the governmental entities); *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962-63 (5th Cir. 2020) (dismissing official capacity claims against a school employee as redundant to claims against the school district, citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).[4]

Plaintiffs' fourth and fifth causes of action purport to assert claims under §1983 against both Uvalde Consolidated Independent School District and Arredondo in his official capacity. Dkt. 34 at ¶¶410-422.  Specifically, Plaintiffs repeat their special relationship and state-created danger claims under the Fourteenth Amendment and add claims for failure to train and creation of policy.[5] *Id.* The Court should dismiss the official-capacity claims against Arredondo because they are redundant of Plaintiffs' claims against UCISD.

### E. Plaintiffs' Failure to Ensure Compliance with Universally Accepted Standards Claims are Without Merit Against Arredondo.

Plaintiffs' claims for "failure to ensure compliance" is simply a rephrased failure to train or supervise claim. Plaintiffs state that Arredondo "failed to ensure" that the other "UCISD-PD Defendants would properly identify and respond to an active shooter incident" and that Arredondo was a final policymaker "with regard to the tactics, arrests, and training of UCISD-PD officers." Dkt. 34 at ¶¶413-14, 419. Again, Plaintiffs' official capacity claims against Arredondo should be dismissed as redundant. However, if they are not dismissed as redundant, the claims should be dismissed because Arredondo is not a policymaker for UCISD, and Plaintiffs have failed to offer well-pled allegations sufficient to demonstrate a constitutional violation for failure to train or creation of a policy. Furthermore, to the extent that a "failure to ensure compliance" claim is

---

[4] *See also, e.g.*, *Clark v. LaMarque Indep. Sch. Dist.*, 54 Fed. App'x 412 (5th Cir. 2002); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996) (dismissing claims against county judge in his official capacity as redundant of claims against the county).

[5] Arredondo is not the UCISD's policymaker as a matter of law. The Board of Trustees is the policymaker for independent school districts in Texas. *Edgewood Indep. Sch. Dist.*, 964 F.3d at 365; *Jett*, 7 F.3d at 1245. Therefore, Arredondo cannot create policy for the UCISD as Plaintiffs allege.

different from a failure to train and/or supervise claim, it is not clearly established in the context of Plaintiffs' Fourteenth Amendment Claims. Arredondo is, therefore, entitled to qualified immunity, and the Court should dismiss these claims against Arredondo.

**F.   The Court Should Dismiss Plaintiffs' Claim for Punitive Damages.**

To obtain punitive damages in connection with their §1983 claims, Plaintiffs must establish that Arredondo violated the Plaintiffs' constitutional rights[6] and that Arredondo acted with reckless or callous indifference to the Plaintiffs' federally protected rights or was motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017). Plaintiffs must demonstrate that Arredondo acted with subjective recklessness or callous indifference. *Kohler v. Johnson*, 396 Fed. App'x 158, 162 (5th Cir. 2010) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)); *Williams*, 352 F.3d at 1015. This is a difficult standard to meet.[7]

Plaintiffs have not offered well-pled allegations to show that Arredondo violated the Plaintiffs' clearly established statutory or constitutional rights. Additionally, Arredondo's alleged conduct does not demonstrate evil motive or intent and does not rise to the level of reckless or callous indifference to the Plaintiffs' statutory or constitutional rights. Plaintiffs acknowledge that Arredondo was responding to an aggravated assault with a deadly weapon in a school. 237 Plaintiffs allege that Arredondo attempted to negotiate with the Shooter. Dkt. 34 at ¶¶279, 287, 316, 318. Likewise, Plaintiffs allege that a TXDPS Ranger "plan[ed] to negotiate with the Shooter" after having been on scene for approximately 28 minutes. Dkt. 34 at ¶317. Plaintiffs allege that

---

[6] *See, e.g.*, *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003); *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 303 (5th Cir. 2000).
[7] For example, a plaintiff established defendants' subjective recklessness and callous indifference by showing that the defendants knowingly perpetuated an unconstitutional prison policy in violation of a court order. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994).

Arredondo and the other law enforcement officers called for additional resources. Dkt. 34 at ¶¶229, 275. Accordingly, the Court should dismiss Plaintiffs' claim for punitive damages against Arredondo.

### G.      The Court Must Stay Discovery

While a defendant's assertion of immunity is pending, courts cannot allow **any** discovery to take place. *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022); *Iqbal*, 556 U.S. at 684-686 (recognizing "serious and legitimate reasons" for the basic thrust of qualified immunity—to free government officials from the concerns of litigation, including disruptive discovery, and noting that permitting discovery to proceed as to other defendants would prejudice defendants who have asserted qualified immunity); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) for the proposition that discovery should not be allowed until the threshold question of qualified immunity is resolved); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").[8] The Court may not allow any discovery to take place until Arredondo's assertion of immunity is resolved.

### <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, Defendant Pedro "Pete" Arredondo prays that the Court the grant this motion to dismiss the individual claims of the Parent Plaintiffs against Arredondo for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and that all Plaintiffs' remaining claims against him be dismissed for failure to state claims upon which relief

---

[8] *See also, e.g., Jackson v. City of Hearne*, 959 F.3d 194, 202 (5th Cir. 2020); *Vander Zee v. Reno*, 73 F.3d 1365, 1368-69 (5th Cir. 1996); *Allen v. Hays*, 812 Fed. App'x 185, 194 (5th Cir. 2020); *Morris v. Cross*, 476 Fed. App'x 783, 785 (5th Cir. 2012) ("Because the defendants raised qualified immunity, [plaintiff] was not entitled to proceed with discovery.")

can be granted, under Federal Rule of Civil Procedure 12(b)(6), that the Court recognize that Arredondo is entitled to qualified immunity from Plaintiffs' claims, and that all of Plaintiffs' causes of action against Defendant Arredondo be dismissed with prejudice to the refiling of same. Defendant Arredondo further prays that Plaintiffs take nothing by this suit; that all relief requested by Plaintiffs be denied; and that Defendant recover all costs of suit; as well as for such other and further relief, both general and special, at law or in equity, to which Defendant may show himself to be justly entitled.

Respectfully submitted,

/s/ *Thomas P. Brandt*

**THOMAS P. BRANDT**
    State Bar No. 02883500
    tbrandt@fhmbk.com
**LAURA O'LEARY**
    State Bar No. 24072262
    loleary@fhmbk.com
**CHRISTOPHER D. LIVINGSTON**
    State Bar No. 24007559
    clivingston@fhmbk.com
**CHRISTOPHER BRANDT**
    State Bar No. 24095984
    cbrandt@fhmbk.com

**FANNING HARPER MARTINSON BRANDT & KUTCHIN, P.C.**
A Professional Corporation
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT PEDRO "PETE" ARREDONDO**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June 2024, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic

filing was sent to all attorneys of record.

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**