**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **JAVIER CAZARES,** *Individually as* | § | |
| *Wrongful Death Beneficiary of J.J.C.,* | § | |
| *deceased minor, et al,* | § | **Civil Action No. 2:24-cv-000045-AM** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JUAN MALDONADO,** *et al.,* | § | |
| **Defendants.** | § | |

**DEFENDANT UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Uvalde Consolidated Independent School District ("UCISD") moves to dismiss Plaintiffs' First Amended Complaint (ECF No. 34) pursuant to FRCP 12(b)(1), in part, and pursuant to FRCP 12(b)(6) and shows the Court the following:

## I. NATURE AND STAGE OF PROCEEDING

1. Plaintiffs Javier Cazares, individually as wrongful death beneficiary of J.J.C., deceased minor, et al. bring suit arising from the May 24, 2022, shooting at Robb Elementary School against several defendants, including several Texas Department of Public Safety (TXDPS) employees, the Uvalde Consolidated Independent School District (UCISD), UCISD police officers and officials, and Motorola Solutions, Inc. ECF No. 34.

2. Plaintiffs assert claims against UCISD under 42 U.S.C. §1983 for alleged violations of the Fourth and Fourteenth Amendments. ECF No. 34. Specifically, Plaintiffs first assert a claim against UCISD under the Fourth and Fourteenth Amendments for "failure to ensure compliance with universally accepted standards." ECF No. 34 at 74-77. Second, Plaintiffs assert a claim against UCISD under the Fourteenth Amendment for "special relationship and state created

danger, failure to ensure compliance with universally accepted standards." ECF No. 34 at 77. Plaintiffs seek recovery from UCISD for damages including punitive and exemplary damages. ECF No. 34 at 84.

## II.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

3.      Plaintiffs do not have standing to pursue claims on their own behalf under Section 1983 for constitutional injury sustained by their children.

4.      Plaintiffs cannot state a claim for violation of the U.S. Constitution because the injuries suffered were committed by a non-state actor, Salvador Ramos. The Fifth Circuit has recognized a single, narrow exception to the general rule from *DeShaney* that the government cannot be held liable for a failure to protect from the violence of non-state actors, and such exception requires a custodial relationship. Plaintiffs cannot allege facts which meet the requirements of the special relationship exception.

5.      Plaintiffs cannot state a claim for unconstitutional seizure because their well-pleaded facts demonstrate that UCISD officials did not seize the teachers and students in the classroom with the armed shooter within the meaning of the Fourth Amendment.

6.      Plaintiffs cannot state a claim for violation of the Fourteenth Amendment under the state-created danger rule because the Fifth Circuit has repeatedly and recently declined to adopt this exception to the *DeShaney* rule.

7.      Even if Plaintiffs could establish a constitutional violation, they cannot state a claim for liability against UCISD via the *Monell* theory of municipal liability because they cannot show that an official policy of the UCISD Board of Trustees was the moving force behind the asserted constitutional injury.

8.      Plaintiffs similarly cannot state a claim for municipal liability against UCISD via the "failure to ensure compliance" theory of municipal liability because they cannot show a compliance/supervision policy that was adopted with deliberate indifference by the UCISD Board of Trustees which was the moving force behind the asserted constitutional injury.

9.      Plaintiffs' claims against Pete Arredondo, Adrian Gonzales, and Jesus Suarez[1] in their official capacities must be dismissed because they are redundant of the claims against the UCISD and have no independent legal significance.

10.     Plaintiffs' requests for punitive or exemplary damages must be dismissed as to Defendant UCISD, as well as to Defendants Pete Arredondo, Adrian Gonzales, and Jesus Suarez in their official capacities, as a matter of law.

### III.     MOTION TO DISMISS STANDARDS

11.     Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the court to hear the case. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is filed, the party seeking to litigate in federal court bears the burden of establishing jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992); *Ramming v. United States*, 281 F.3d 158, 161 (5ᵗʰ Cir. 2001). Federal courts are courts of limited jurisdiction and must, at all times, have "statutory or constitutional power to adjudicate the case." *Clean COALition v. TXU Power,* 536 F.3d 469, 470 (5th Cir. 2008).

12.     In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See*

---

[1] Plaintiffs have filed a stipulation of dismissal, without prejudice, as to all claims against UCISD Principal Mandy Gutierrez. In the event that the stipulation is not valid or Plaintiffs reassert claims against Ms. Gutierrez, UCISD's argument applies with equal force in regards to Ms. Gutierrez in her official capacity.

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). However, the plaintiff must

do more than recite the formulaic elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 556-57 (2007). The plaintiff must plead specific facts, not mere conclusory allegations.

*Tuchman v. DSC Comm'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). The court is not bound to

accept "as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 678.

Dismissal is appropriate if the complaint fails to plead "enough facts to state a clam to relief that

is plausible on its face." *Twombly,* 550 U.S. at 570.

### IV. ARGUMENTS AND AUTHORITY

**A.  Plaintiffs lack standing to assert individual claims on their own behalf under the U.S. Constitution.**

13.    Plaintiffs claim the "Parent Plaintiffs" are "suing in their individual capacities." Dkt. 34 at

¶61. Javier Cazares; Santa Gloria Cazares; Kimberly Garcia; Rachel Garza; Miguel Cerrillo;

Abigale Veloz; Ana Rodriguez; Jerry Mata; Veronica Mata; Jessie Rodriguez; Deanna Gornto;

Maria Magdalene Garcia; Juan Julian Bravo; Veronica Luevanos; Jacob Silguero; April Elrod;

Kimberly Rubio; Felix Rubio; Jose Luevanos; Christina Luevanos; Jennifer Lugo; Steven Garcia;

Alyssa Rodriguez; Evadulia Orta; Mandy Marie Renfro; David Balmer; Eli Torres; Jose Martinez;

Kassandra Chavez; Vincent Salazar, III; and Melinda Alejandro purport to assert claims

individually against Arredondo based on injuries to their relatives. Dkt. 34 at ¶¶29-59.

14.    Plaintiffs lack standing to pursue any individual claims under the facts or legal theories

asserted in their pleading, as their Complaint specifically alleges only violations of the

constitutional rights of their children. *See* ECF No. 34. To establish standing under Article III of

the United States Constitution with respect to her individual claims, a plaintiff must demonstrate

that she has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the

defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n. 1.

15.    Plaintiffs do not assert that the actions of the UCISD deprived them personally of any protected rights; the allegations in the lawsuit are that their minor child's constitutional rights were violated by UCISD official's response to Salvador Ramos's murderous actions, and that their children's constitutional rights were violated by UCISD's allegedly unconstitutional policies and compliance related to a school shooting incident. To the extent that Plaintiffs attempt to assert that their individual constitutional rights were violated by officers restraining parents outside of the school, they failed to identify themselves as being restrained, failed to identify any officers who did the alleged restraining, or whether or not they were employed by UCISD as opposed to the several other law enforcement agencies on the scene. *See* ECF No. 34. Moreover, all of the factual allegations against UCISD police officers refer to them being within the building during the response. *See id.*

16.    Federal courts have consistently held that a parent cannot assert claims under Section 1983 on their own behalf based solely on constitutional injuries to their child. Under § 1983, a plaintiff has standing in her individual capacity if she "clearly allege[s] an injury to [her] own personal constitutional rights." *Hooker v. Dallas Indep. Sch. Dist.*, 3:09-CV-1289-D, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010) (quoting *Trujillo v. Bd. of Cnty. Commis. of Santa Fe Cnty.*, 768 F.2d 1186, 1187 (10th Cir. 1985)). "It is well-established that parents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's constitutional rights." *Crozier v. Westside Cmty. Sch. Dist.*, No. 8:18CV438, 2018 WL 5298744, at *2 (D. Neb. Oct. 25, 2018)

(citations omitted); *see also Barker v. Halliburton Co.,* 645 F.3d 297, 300 (5th Cir. 2011) ("A third party may not assert a civil rights claim based on the civil rights violations of another individual.") Because Plaintiffs are not asserting any claims based on violations of their own constitutional rights by UCISD officials, as opposed to their children's rights, they do not have standing to bring claims in their individual capacity, and such claims should be dismissed as a matter of law.

### B. Plaintiffs cannot show the requisite state action necessary to state a claim under the Fourteenth Amendment to the U.S. Constitution.

17.　　To state a § 1983 claim, a plaintiff must show that a person acting under color of state law deprived her of a right guaranteed by the Constitution or federal law. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013) According to the well-pleaded facts in Plaintiffs' Amended Complaint, former student Salvador Ramos, a private actor, injured and killed the Robb Elementary students and teachers. While indeed horrific, this situation cannot support a constitutional claim because it lacks the requisite state action. "Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983." *Dollar v. Haralson County,* 704 F.2d 1540, 1543 (11th Cir. 1983). "Courts have declined to recognize as a general rule a person's affirmative right to state protection, even when such protection may be necessary to secure life, liberty, or property interests." *Walton v. Alexander,* 20 F.3d 1350, 1354 (5th Cir. 1994).

18.　　As a general rule, the state's failure to protect an individual from private violence does not violate the Constitution. *DeShaney v. Winnebago County Dep't. of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There is only one exception to this rule that is recognized by the Fifth Circuit: the "special relationship." *Robinson v. Webster Cty., Mississippi,* 825 F. App'x 192, 195 (5th Cir. 2020). The Fifth Circuit has consistently held that substantive due

process is implicated only in "certain limited instances" where "the state's affirmative restraint on an individual's liberty, 'through *incarceration*, *institutionalization*, or *other similar restraint of personal liberty*,' not its failure to act, is the compulsion required to create a 'special relationship' and invoke the protection of the Due Process Clause." *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (citing *DeShaney,* 109 S. Ct. at 1000)(emphasis added). The Fifth Circuit has specifically held that there is no special relationship between a school district and its students, even where compulsory attendance is required. *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012)(en banc); *see also Leffall v. Dallas Indep. Sch. Dist*., 28 F.3d 521, 522, 529 (5th Cir. 1994) (refusing to find a special relationship between a school district and a student killed by a gunshot fired in the school parking lot after a school dance); *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 199, 202-03 (5th Cir. 1994) (declining to find a special relationship between a school district and a student shot and killed in the hallway during the school day by a boy who was not a student but had gained access to the school). The Fifth Circuit has also consistently rejected the proposition that promised or failed police intervention creates a special relationship, much less recognized a custodial relationship between students and the police. *Cook v. Hopkins,* 795 F. App'x 906, 912–14 (5th Cir. 2019) (collecting cases).

19.    Similar cases regarding the response to mass shooter incidents have consistently found that constitutional claims against first responders and their employers are not cognizable, even where they asserted the "custodial" relationship exception to *DeShaney*. *See, e.g. Vielma v. Gruler,* 347 F. Supp. 3d 1122 (M.D. Fla. 2018), aff'd, 808 F. App'x 872 (11th Cir. 2020); *Vielma*, 808 F. App'x 872 (11th Cir. 2020); *L.S. ex rel. Hernandez v. Peterson,* 982 F.3d 1323, 1327 (11th Cir. 2020). Here, Plaintiffs argues that because the first responders formed a perimeter *outside* of the classrooms, when Ramos was already *inside* the classroom, they in effect took the children in the

classroom into custody. The flawed logic of this argument is apparent because it is undisputed and affirmatively pleaded by Plaintiff that Ramos was in the classroom too and that he was committing violence against the teachers and students within, negating any determination that the children and teachers also present were incarcerated, rather than being held hostage by a murderer. Accepting this argument would also require agreeing with the absurd result of its logical conclusion—that if the children and teachers were incarcerated, if one of them had attempted to escape, the first responders would have taken steps to force them to return to the classroom. No actions taken by the first responders restrained any of the students' freedom to act, and thus the "special" or "custodial" relationship is unavailing. Plaintiffs' reliance on "lockdown drills" as creating a special relationship is similarly unavailing. If, as the Fifth Circuit has consistently held, compulsory school attendance laws cannot create a special relationship, it follows that lessons or rules instilled for lockdowns are a "far cry from the situation of incarcerated prisoners, institutionalized mental heath patients, or children placed in foster care." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,* 675 F.3d 849, 861 (5th Cir. 2012).

21.    Plaintiffs also assert a "state-created danger" theory of liability under § 1983. However, the Fifth Circuit has both consistently and recently declined to recognize the "state-created danger" theory of liability. *See, e.g. Fisher v. Moore,* 62 F.4th 912, 913 (5th Cir. 2023)("This circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule."); *Joiner v. United States,* 955 F.3d 399, 407 (5th Cir. 2020); *Doe ex rel. Magee,* 675 F.3d at 864; *Whitley v. Hanna*, 726 F.3d 631, 640 n. 5 (5th Cir. 2013) ("This court has not adopted the state-created-danger theory….and [Plaintiff] wisely has disclaimed reliance on it."). Thus, Plaintiffs cannot establish the requisite state action to support their Fourteenth Amendment claims asserted pursuant to § 1983, and they should be dismissed.

22.     Even if the state-created danger theory were viable in the Fifth Circuit, Plaintiffs' claim premised upon this theory still fails. Courts have consistently recognized that first responders in an emergency have to make decisions quickly, under pressure, and without the luxury of hindsight. *See, e.g. Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998). Accordingly, emergency police responses "with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Id.* Courts have consistently dismissed Section 1983 claims, including in emergency responses to school shootings, where first responders have made allegedly mistaken or wrong decisions, absent well-pleaded facts demonstrating intentional wrongdoing. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1326, 1333 (11th Cir. 2020)(dismissing claims brought against first responders for their alleged failure to act in response to the Parkland shooting); *Rohrbough v. Stone*, 189 F. Supp. 2d 1088, 1105 (D. Colo. 2001)(dismissing Section 1983 claims regarding police actions in responding to the Columbine shooting). Thus, even if the state-created danger theory were viable in this Circuit, Plaintiffs' well-pleaded facts negate that any UCISD official intended to harm their children or shocked the conscience, and such claim should be dismissed.

### C. Plaintiffs cannot state a claim for unlawful seizure under the Fourth Amendment.

23.     Plaintiffs cannot state a claim for unlawful seizure because none of the students or teachers was subjected to any type of physical force, much less excessive force, nor are there any well-pleaded facts that plausibly articulate that any of the teachers or students believed that they were not free to leave because of the first responders outside rather than the murderer within the classroom. *See* ECF No. 34. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'

[T]he 'seizure' of a 'person,' which can take the form of 'physical force,' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting  *Terry v. Ohio*, 392 U. S. 1, 19, n. 16 (1968)); see also *California v. Hodari D.,* 499 U.S. 621 (1991). "At the adoption of the Fourth Amendment, a 'seizure' was the 'act of taking by warrant' or 'of laying hold on suddenly.'" *Torres*, 141 S. Ct., at 995 (citation omitted).  "A seizure requires the use of force with an intent to restrain. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy the rule." *Id.* at 998 (emphasis in original) (citation omitted). "[T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain…." *Id.* (emphasis in original). "Nor does the seizure depend on the subjective perceptions of the seized person." *Id*. at 999. Plaintiffs' well-pleaded facts indicate that all of the UCISD first responders' actions were aimed toward addressing the shooter and none that indicate intentional force with intent to restrain the teachers or students. ECF No. 34.

24.     When considering whether a seizure occurred, a court must assess "in view of all of the circumstances surrounding the incident, [whether] a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). "Violation of the Fourth Amendment [for an Unlawful Seizure claim] requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 598 (1989). "When a person 'has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id*. (quoting *United States v. Flowers,* 6 F.4th 651, 655 (5th Cir. 2021)). Here, there are no allegations that any of the students or teachers were arrested, subjected to any physical force, or ordered or told not to leave the classrooms or otherwise

impeded from doing so by the first responders; instead, all of the factual allegations show that they did not leave because of the shooter. *See* ECF No. 34.

**D. Plaintiffs cannot show school district liability under 42 U.S.C. § 1983.**

25.     Even if Plaintiffs could establish a constitutional violation, their claims still fail because they cannot plead facts showing constitutional liability attributable to the UCISD. A local governmental entity, such as a school district, can only be held liable under Section 1983 for acts for which it is actually responsible. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). To establish governmental liability under Section 1983, in addition to a cognizable constitutional injury, a plaintiff must also show: (1) a policymaker with final policymaking authority; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Doe ex rel. Magee*, 675 F.3d at 866. Thus, "a governmental entity cannot be held liable solely because it employs a tortfeasor—or, in other words, a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 214 (5th Cir. 1998)(5th Cir. 1998) (citing *Monell,* 436 U.S. at 691).

26.     Even assuming a constitutional violation occurred, Plaintiffs' Section 1983 claims against UCISD fail because they cannot establish that an "official policy or custom" of UCISD "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly

- 11 -

represents district policy." *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority. *Id.*

27.     Whether a particular official has "final policy-making authority" is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 128 (1988). It is settled law that, in Texas, only the board of trustees has final policy-making authority in an independent school district. TEX. EDUC. CODE §11.151; *Jett v. Dallas Indep. School Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993). Superintendents of schools, school administrators, principals, teachers, and school staff, including chiefs of police, do not have final policy-making authority in a school district. *See Jett*, 7 F.3d at 1245; *Teague v. Texas City Indep. Sch. Dist.,* 386 F.Supp.2d 893, 896 (S.D. Tex. 2005), *aff'd* 185 Fed. Appx. 355 (5th Cir. 2006); *Ali v. La Marque ISD Educ. Found., Inc.,* No. CIV.A. G-05-276, 2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

28.     Here, Plaintiff asserts, in conclusory fashion, that because Arredondo was the Chief of Police for UCISD, by simply virtue of that position, he was a final policymaker for the school district. ECF No. 34. They assert in a single stray reference that Suarez was also a policymaker. *Id.* However, as a matter of state law, Arredondo is not the final policymaker for UCISD, and therefore he is not responsible for the official policies and procedures of the school district. *See Jett,* 109 S.Ct. 2702, 2724. A school district's board of trustees is the final policymaker. *Id.*; TEX. EDUC. CODE §11.151. By statute, the board of trustees, not the chief of police, "shall determine the law enforcement duties of peace officers, school resource officers, and security personnel." Tex. Educ. Code Ann. § 37.081(d). Similarly, the "board of trustees of the district shall determine the scope of the on-duty and off-duty law enforcement activities of school district peace officers." *Id.* at (e). Finally, the "chief of police of the school district police department shall be accountable to

the superintendent and shall report to the superintendent." *Id.* at (f). Plaintiff has not alleged any facts showing that UCISD delegated policymaking authority to Arredondo or Suarez such that he became the final policymaker for the district's law enforcement activities. *See* ECF No. 34. Plaintiffs' Section 1983 claims should be dismissed because they cannot establish the policymaker element of their claim against UCISD. *See Ali*, No. CIV.A. G-05-276, 2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

29.     UCISD may not be held liable for any "policy" developed by school officials other than its Board of Trustees. *Teague,* 386 F.Supp.2d at 896. Moreover, Plaintiffs' own allegations demonstrate that the UCISD Police Department is an agency of UCISD, and UCISD was charged with the policies and practices for the UCISD Police Department, the administration and operation of the UCISD-PD, including the training, policies and practices and is legally responsible for the acts and omissions of the UCISD-PD. ECF No. 34 at 23. Plaintiffs further alleges that "pursuant to Chapter 37 of the Texas Education Code, the UCISD board set forth a policy authorizing commissioned peace officers to enforce rules adopted by the board and focused on the protection of school district students, staff, buildings, and grounds. At all relevant times, the UCISD-PD was directed to enforce appropriate rules for the orderly conduct of the district in carrying out its purposes and objectives as a separate jurisdiction relating to the conduct of its students and personnel." ECF No. 34 at 23.

30.     To hold a local government unit liable under Section 1983 for the misconduct of its employees, a plaintiff must initially allege that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist*., 28 F.3d 521, 525 (5th Cir.1994). Here, Plaintiffs' well-pleaded factual allegations make clear that they are relying on a *respondeat superior* theory of liability which is not cognizable under Section 1983. To state a

claim for which a school district could be held liable § 1983, a plaintiff must point to more than the actions or inactions of an employee; they must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation. *Meadowbriar Home for Children, Inc., v. Gunn*, 81 F.3d 521, 532-33 (5th Cir.1996).

31.     Plaintiffs furthermore cannot show governmental liability based on a widespread custom or practice; isolated events are not sufficient to establish custom. *Ramie v. City of Hedwig Vill., Tex.,* 765 F.2d 490, 494 (5th Cir. 1985); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987) *aff'd*, 851 F.2d 359 (5th Cir. 1988). Plaintiffs provide no well-pleaded factual allegations of substantially similar incidents occurring at UCISD to establish the requisite widespread custom or practice necessary to sustain their claims; thus, they should be dismissed, as a matter of law. See ECF No. 34.

> **E.     Plaintiff has failed to state a claim under the § 1983 failure to train/supervise theory of liability.**

32.     Plaintiff similarly cannot show municipal liability under a failure to train/supervise theory of liability, which they have repackaged as "failure to ensure compliance." ECF No. 34 at 74-77. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "A policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427 (1985) (plurality opinion)(internal citations and alterations omitted). An inadequate training program, *after* it is

shown to be an official policy or custom of which the policymaking body has knowledge, may only support a § 1983 claim where: (1) the entity's training policy was inadequate, (2) it was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy *directly caused* the constitutional violation.[2] *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014); *Malone v. City of Fort Worth, Texas,* 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 536 U.S. at 61 (quoting *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). The Supreme Court has made clear that "[a] less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* at 61-62 (internal citations and alterations omitted).

34.     Here, Plaintiffs put forth no allegations showing that Arredondo, Suarez, or Gonzales were not properly trained. *See* ECF No. 34. Instead, Plaintiffs actually allege that Gonzales and Arredondo failed or chose not to follow their training. *Id.* at 24.  Plaintiffs make no claim, nor allege any facts demonstrating that UCISD was deliberately indifferent to deficiencies in its training or supervision, nor can they, as only "when municipal policymakers are on *actual or constructive notice* that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id* (emphasis added). Thus,

---

[2] "Like the standards applicable to a failure to train, to hold a local government liable for failure to supervise a plaintiff must show '(1) the municipality's supervision was inadequate, (2) the municipality's policymaker was deliberately indifferent in supervising the subordinates, and (3) the inadequate supervision directly caused the plaintiff's injury.'" *Malone,* 297 F. Supp. 3d at 662 (*Clyce v. Hunt Cty.,* 515 Fed.Appx. 319, 323 (5th Cir. 2013))(citations omitted).

Plaintiffs' allegations fail to demonstrate any of the elements of their failure to train/supervise theory of liability, and it should be dismissed.

35.     Moreover, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate that a governmental entity knew of deficiencies in their training programs and nonetheless acted with deliberate indifference for purposes of failure to train. *Id* (quoting *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62.  Plaintiffs have not pleaded well-pleaded facts demonstrating a pattern of similar violations at the hands UCISD employees, and thus cannot establish that UCISD was on actual or constructive notice of omissions in their training or supervision. *See* ECF No. 34. Whether analyzed under traditional *Monell* municipal liability or a failure to train/supervise theory, Plaintiffs' well-pleaded facts fail to show any basis for liability against UCISD.

### F. Plaintiffs' § 1983 claims against any UCISD employee or official in his or her official capacity are redundant and should be dismissed as a matter of law.

36.     Plaintiff asserted § 1983 claims against UCISD officials Adrian Gonzales, Jesus Suarez, and Pete Arredondo. It is established that suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Monell v. Dep't. of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55. (1978). An official capacity suit is to be treated as a suit against the governmental entity itself. *Kentucky*, 473 U.S. at 170-71; *U.S. ex rel. Adrian v. Regents of Univ. Of Cal.,* 363 F.3d 398, 402 (5th Cir. 2004). Official capacity claims coterminous with § 1983 claims against a

governmental entity are not only redundant, but they also have no independent legal significance. *See Bluitt v. Houston Indep. Sch. Dist.,* 236 F.Supp.2d 703, 727 (S.D.Tex. 2002). Accordingly, the Court should dismiss the §1983 claims against Arredondo, Gonzales, and Suarez in their official capacities because such claims are redundant and of no independent legal significance, as they are the same as the § 1983 claims for alleged violation of constitutional rights that Plaintiffs are pursuing against UCISD. *See* ECF No. 1; *see also Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist.,* 937 F. Supp. 608, 613 (S.D. Tex. 1996).

### G. Plaintiffs' request for punitive damages must be dismissed.

37.     Plaintiff's request for punitive and exemplary damages for alleged constitutional violations by UCISD as well as any of its employees or officials in their official capacities should be dismissed as a matter of law. *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400, 412 (5th Cir. 2015)("The Supreme Court has held that a municipality's liability for § 1983 damages does not thereby subject it to punitive damages, from which government entities were historically immune. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263, 101 S.Ct. 2748, 2758, 69 L.Ed.2d 616 (1981).").

### H. Discovery must be stayed.

38.     The individual defendants have asserted their qualified immunity from suit, and while their immunity is pending, no discovery may take place. *Carswell v. Camp,* 54 F. 4th 307, 311 (5th Cir. 2022); *Iqbal*, 556 U.S. at 684-686 (noting that permitting discovery to proceed as to other defendants would prejudice defendants who have asserted qualified immunity); *see also, e.g., Jackson v. City of Hearne*, 959 F.3d 194, 202 (5th Cir. 2020); *Vander Zee v. Reno*, 73 F.3d 1365, 1368-69 (5th Cir. 1996); *Allen v. Hays,* 812 Fed. App'x 185, 194 (5th Cir. 2020). The Court may

- 17 -

not allow any discovery to take place until the individual defendants' assertion of immunity is resolved.

## V. CONCLUSION AND PRAYER

Defendant UCISD respectfully prays that the Court grant this motion to dismiss the Plaintiffs' individual claims for lack of jurisdiction, pursuant to FRCP 12(b)(1), and further prays that the Court grant this motion to dismiss all of Plaintiffs' remaining claims against UCISD for failure to state a claim upon which relief can be granted, pursuant to FRCP 12(b)(6), with prejudice. Defendant UCISD prays for any and all relief to which it has shown itself justly entitled.

Respectfully submitted,

*/s/ Katie E. Payne*
Katie E. Payne
State Bar No. 21888700
Federal No. 979301
E-Mail: kpayne@wabsa.com

D. Craig Wood
State Bar No. 24071347
Federal ID No. 1786856
E-Mail: cwood@wabsa.com

**WALSH GALLEGOS KYLE ROBINSON & ROALSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

**ATTORNEYS FOR DEFENDANT UCISD**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Katie E. Payne*
Katie E. Payne

- 19 -