IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| **JAVIER CAZARES,** *Individually as* *Wrongful Death Beneficiary of J.J.C.,* *Deceased Minor, et al* <br>         *Plaintiffs,* <br><br> v. <br><br> **JUAN MALDONADO,** *et al* <br>         *Defendants.* | §<br>§<br>§<br>§<br>§<br>§   Civil Action No. 2:24-cv-000045-AM<br>§<br>§<br>§<br>§ |

### DEFENDANT PEDRO "PETE" ARREDONDO'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Pedro "Pete" Arredondo, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this Reply in Support of his Motion to Dismiss the claims brought against him in Plaintiffs' First Amended Complaint for Damages (Doc. 34). In support thereof, Arredondo respectfully shows as follows:

### SUMMARY

Defendant Arredondo is entitled to dismissal of all Plaintiffs' claims. Plaintiffs misunderstand that their official-capacity claims against Arredondo are duplicative of their claims against UCISD. Similarly, Plaintiffs' purported state-law claims are barred by the election-of-remedies provision in the Texas Tort Claims Act ("TTCA") because the claims are against Arredondo for actions taken in the general scope of his UCISD employment. Tellingly, Plaintiffs invite this Court to overturn qualified immunity—an invitation the Court should decline. Arredondo did not commit any constitutional violation, much less a constitutional violation "obvious" to any reasonable officer. Arredondo is alleged to have taken the same actions as better trained, better funded, and more experienced officers. Furthermore, the courts have soundly

rejected Plaintiffs' liability theories against Arredondo. Thus, Plaintiffs have failed to plausibly allege that Arredondo's actions constituted a violation of clearly established law. Arredondo is entitled to qualified immunity.

## ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Official Capacity Claims Against Arredondo Should be Dismissed.

Plaintiffs' claim that dismissal of their official capacity claims against Arredondo are "premature" is without merit. Doc. 59, at 58.[1] Plaintiffs' argument cites no authority and misunderstands the meaning of an official capacity suit. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In contrast, official-capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). Official-capacity claims are treated as one against the entity which is the real party-in-interest. *Id.* at 166. When a government-official defendant is sued in his official capacity, and the governmental entity is also sued, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). Thus, the official-capacity claims against Arredondo should be dismissed.

### B. Plaintiffs' Individual Claims Based on State-Law Wrongful Death Should be Dismissed.

Plaintiffs similarly respond that they have standing to pursue state-law claims[2] against

---

[1] Arredondo's page references are to the filed page number at the top of the document.
[2] It is unclear that Plaintiffs are stating causes of action under state law. They claim they are in their response, but they only list seven causes of action in their amended complaint. Doc. 34. While federal courts look to state law in assessing damages, Plaintiffs did not include these state-law damages as causes of action. *Id.*

Arredondo and his government employer. Plaintiffs are wrong. The TTCA provides an election-of-remedies provision found in section 101.106(f):

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed."

TEX. CIV. PRAC. & REM. CODE § 101.106(f). Plaintiffs specifically allege that Arredondo "was Chief of the UCISD-PD and was acting as such at Robb Elementary on May 24, 2022." Doc. 34, at ¶76. Furthermore, Plaintiffs' state-law claims have been brought against Arredondo's employer as well. Doc. 34, at ¶75. Accordingly, to the extent Plaintiffs are making state-law claims, Plaintiff's state-law claims against Arredondo should be dismissed. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (holding "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106").

### C. Plaintiffs' Contention that Qualified Immunity "Has No Legal Basis" is a Misstatement of the Law.

Plaintiffs assert that, in a concurring opinion, Judge Willet asserted that the qualified immunity is flawed from inception. Doc. 59, at 42 (citing *Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir.), *cert. denied*, 144 S. Ct. 193 (2003) (Willet, J., concurring). Plaintiffs further assert that Justice Thomas and Sotomayor have "expressed serious reservations about qualified immunity." Doc. 59, at 42. However, as Judge Willett observed, no matter how "seismic the implications, as middle-management circuit judges, [the Fifth Circuit] cannot overrule the Supreme Court" and "only that Court can definitively grapple with Section 1983's enacted text and decide whether it means what it says—and what, if anything, that means for Section 1983 immunity jurisprudence."

*Id.* at 981. The opinions Plaintiffs cite to do not abrogate qualified immunity. A Fifth Circuit panel recently declined the same request Plaintiffs make here. *Winder v. Gallardo*, -- F.4th --, 2024 WL 4313652 (5th Cir. Sept. 27, 2024) ("Appellants first request that we upend qualified immunity outright … [w]e decline Appellants' invitation."). If the Fifth Circuit cannot "definitively grapple" with § 1983's text in a way that runs contrary to Fifth Circuit and Supreme Court precedent, this court certainly should not indulge Plaintiffs' invitation to in this case.

Qualified immunity represents the norm, and it should be denied only in rare circumstances. *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (the Supreme Court holds that courts "must think twice before denying qualified immunity"). A complaint that pleads facts which are "'merely consistent with' a defendant's liability" is insufficient to defeat a motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Consequently, Plaintiffs must show that a constitutional violation occurred and that clearly established law meant a reasonable officer would have recognized the violation. Plaintiffs have not and, therefore, their claims against Arredondo should be dismissed.

**D. Plaintiffs' Attempt to Avoid Showing Clearly Established Law by Relying on *Hope v. Pelzer* is Ineffective.**

Plaintiffs contend that they need not show clearly established law regarding their Fourth and Fourteenth Amendment claims because it is "obvious" that law enforcement officials violated constitutional standards. Doc. 59, at 37. Plaintiffs cite to two Supreme Court cases involving prison inmates this theory: *Hope v. Pelzer*, 536 U.S. 730 (2002) and *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam). The response to this argument is best summarized by the Fifth Circuit's recent en banc decision in *Villarreal v. City of Laredo*, 94 F.4th 374 (2024):

> *Hope* and its progeny express a general, but decidedly narrow, obviousness exception to the requirement that "clearly established law" be founded on materially identical facts. In

> any event, those cases are inappropriate templates for describing "clearly established" law in this context. In *Morgan v. Swanson*, 659 F.3d 359, 373 (5th Cir. 2011) (en banc), a case involving First Amendment free exercise rights, this court noted that *Hope* does not stand for the broad proposition that plaintiffs need not offer any similar cases to prove that an officer should have been on notice that his conduct violated the Constitution. ***Hope* does not excuse plaintiffs from proving that every reasonable official would know the conduct at issue violates the Constitution.** And *Sause*, if anything, also strongly implies that an individual's claimed First Amendment rights must be closely analyzed when the question involves probable cause for an arrest, or an officer's qualified immunity. 138 S. Ct. at 2562–63.

*Id*. at 395 (emphasis added). Plaintiffs cannot defeat qualified immunity by merely declaring something an "obvious" constitutional violation.

Plaintiffs make conclusory statements that "'no reasonable [state] officer could have concluded' that the conduct was 'constitutionally permissible'" and, therefore, qualified immunity does not apply. Doc. 59, at 38. Plaintiffs also state, in a conclusory fashion, that "There is no room for disagreement.'" Doc. 59 at 14. In deciding a motion under Rule 12(b)(6), the court does not, "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Plaintiffs must still plead facts making it plausible that all reasonable officers would know Defendant Arredondo's alleged conduct violated the constitution. But Plaintiffs do the opposite.

Plaintiffs respond that "[a]t least 91 TXDPSC officers responded to the active shooter incident at Robb Elementary School on May 24, 2024." Doc. 59, at 47. Plaintiffs allege that under the circumstances even a highly skilled and better trained TXDPS Ranger "indicated that it was acceptable to wait until more resources arrived before engaging the Shooter." Doc. 34 at ¶237. Plaintiffs admit that the at least 91 TXDPS officers "did not defer to Defendant Arredondo as incident commander, and he did not consider himself to have assumed incident command." Doc.

59, at 46. Indeed, Plaintiffs allege that other "[o]fficers reasoned there was 'no way' to take action, and the only thing they could do was wait … and try to get something that had better coverage where we could actually stand up to him." Doc. 34 at ¶274. Under such pleadings there is no way Plaintiffs can assert that *all* reasonable officers would have acted differently from Arredondo.

### E. Neither the Special Relationship Nor the State-Created Danger Exceptions are Clearly Established Law in the Fifth Circuit.

To defeat qualified immunity, Plaintiffs must show: (1) that Defendant Arredondo violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007). Here, Plaintiffs argue that Defendant Arredondo and the other law enforcement officers on scene violated Plaintiffs' due process rights by allowing the Shooter, who was not a state actor, to inflict harm upon Plaintiffs. But "[a]s a general rule, the state's failure to protect an individual from private violence does not violate the Due Process Clause." *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004). In an attempted end-run around their pleading requirements, Plaintiffs assert that Arredondo took affirmative action by requesting additional equipment and seeking to negotiate with the shooter. Plaintiffs cannot avoid their pleading burden. Neither the special-relationship exception nor the state-created danger exception was clearly established law at the time of the shooting.

The Fifth Circuit has held that "a public school does not have a ... special relationship with its students requiring the school to ensure the students' safety from private actors." *Doe v. Covington County Sch. Dist.*, 675 F.3d 849, 857 (5th Cir. 2012) (en banc). Likewise, the Fifth Circuit has "held time and again [that] the right to be free from state-created danger is not clearly established in this circuit." *Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023) (citing *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020)). Thus, the Fifth Circuit has held both before and after

the shooting that the state-created danger exception is not clearly established law. Plaintiffs have not shown that Defendant Arredondo violated Plaintiffs' clearly established due process rights.

   F.   **Plaintiffs' Sweeping Generalized Unlawful Seizure Claim Fails.**

Plaintiffs respond that the officers seized the students and teachers "because they were confined to their classrooms both by state-mandated lockdown procedures and by the decision of Defendants to barricade the Shooter in their classrooms." Doc. 59, at 34. Similarly, Plaintiffs claim that Arredondo and the other officers "trapped the locked down students and teachers in Classrooms 111 and 112 with the active Shooter." Doc. 59, at 20. "'[A] Fourth Amendment seizure [occurs] … when there is a government termination of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989)). The Supreme Court has observed that the Fourth Amendment "addresses 'misuse of power,' … not the accidental effects of otherwise lawful conduct." *Brower*, 489 U.S. at 596–97. Indeed, "[t]he writs of assistance that were the principal grievance against which the Fourth Amendment was directed did not involve unintended consequences of government action." *Id*. at 596.

While *Brower* dealt with a very different set of facts, its holding makes clear that the accidental effects of government actors, such as police officers, does not give rise to a violation under the Fourth Amendment. Defendant Arredondo and the other law enforcement officers were lawfully responding to the actions of the Shooter. Arredondo attempted to negotiate with the Shooter and, along with other officers, contained the Shooter, but this was not a seizure of the Plaintiffs. As Plaintiffs admit, Arredondo and the other law enforcement officers called for additional resources. Doc. 34 at ¶¶229, 275. "Officers reasoned there was 'no way' to take action, and the only thing they could do was wait … and try to get something that had better coverage where we could actually stand up to him." Doc. 34 at ¶274. Moreover, Plaintiffs allege that

"[o]fficers did not want to move forward until they had rifle-rated shields." Doc. 34 at ¶275. Plaintiffs allege that better trained and more skilled officers from better equipped and funded agencies than Arredondo took similar actions to Arredondo. The Shooter was in the classroom before Arredondo even arrived.

Moreover, Plaintiffs respond with affirmative acts that are in no way attributable to Arredondo. Again, Plaintiffs admit that the at least 91 TXDPS officers "did not defer to Defendant Arredondo as incident commander, and he did not consider himself to have assumed incident command." Doc. 59, at 46. Plaintiffs respond that UPD (not UCISD-PD) dispatchers instructed children who called in to remain in their classrooms. Doc. 59, at 28. Plaintiffs respond that officers outside (Arredondo was inside) physically restrained parents at the school's perimeter. Doc. 59, at 28. Plaintiffs respond that other officers "prevented emergency medics from providing assistance to the wounded." Doc. 59, at 28. These allegations against other officers are insufficient to defeat Arredondo's entitlement to qualified immunity.

"'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). The Fifth Circuit explained that "[t]he Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery." *Carswell*, at 311 (emphasis in original). The court emphasized that a defendant's entitlement to immunity "should be determined at the earliest possible stage of the litigation—full stop." *Id.* at 312 (citation and internal quotation marks

omitted). Plaintiffs' assertion that a sweeping, generalized allegation[3] putting everyone at the scene is insufficient to defeat the Arredondo's entitlement to qualified immunity.

### G. Plaintiffs' Fail to Plausibly Allege that Arredondo Acted with Deliberate Indifference.

Plaintiffs respond that they "have alleged that Defendant Arredondo (and other Defendants) were deliberately indifferent to Plaintiffs' rights because (among other reasons) they feared the Shooter's AR-15." Doc. 59, at 58. But Plaintiffs' allegations prove otherwise. The "deliberate indifference" standard is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). The relevant inquiry is not the ultimate efficacy of the actions that were taken, nor the number of steps that were taken. *Taylor Indep. Sch. Dist.*, 15 F.3d at 458 (superintendent was not deliberately indifferent even though his actions were ineffective); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 531-32 (5th Cir. 1994). Instead, all that is required are good-faith measures, any measures designed to avert the anticipated harm. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996); *Lefall*, 28 F.3d at 531-32 (the single act of school official's hiring of security guards for dance where student was fatally shot conclusively established that the official did not act with deliberate indifference, even though the official had actual knowledge that violence was likely at dance).

---

[3] Plaintiffs have not pleaded a bystander liability claim, but they reference one in their response. Doc. 59, at 43. Plaintiffs' reliance on "bystander liability" is misplaced because bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation." *Whitley v. Hannah*, 726 F.3d 631, 647 (5th Cir. 2013). Furthermore, if reasonable officers could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, Plaintiffs are broadly asserting "[a] total of 376 law enforcement officers had responded to the active shooter incident at Robb Elementary School: [including Arredondo and four other UCISD-PD officers]." Doc. 34, at ¶362. If 376 law enforcement officers all took the same action, then reasonable officers could differ as to the constitutionally allowable course of action.

Here, Plaintiffs allege that Arredondo undertook measures to avert the harm inflicted by the Shooter. Plaintiffs allege that Arredondo attempted to negotiate with the Shooter. Doc. 34 at ¶¶279, 287, 316, 318. Likewise, Plaintiffs allege that a TXDPS Ranger "plan[ed] to negotiate with the Shooter" after having been on scene for approximately 28 minutes. Doc. 34 at ¶317. Plaintiffs allege that Arredondo and the other law enforcement officers called for additional resources. Doc. 34 at ¶¶229, 275. "Officers reasoned there was 'no way' to take action, and the only thing they could do was wait … and try to get something that had better coverage where we could actually stand up to him." Doc. 34 at ¶274. Moreover, Plaintiffs allege that "[o]fficers did not want to move forward until they had rifle-rated shields." Doc. 34 at ¶275. Plaintiffs allege that better trained and more skilled officers from better equipped and funded agencies than Arredondo took similar actions to Arredondo. Plaintiffs' argument is that the actions Arredondo took were ineffective. But that is not "deliberate indifference." Accordingly, Arredondo is entitled to qualified immunity. The claims against Arredondo and the request for punitive damages should be denied.

## CONCLUSION

For the reasons above as well as those stated in his motion to dismiss, Defendant Pedro "Pete" Arredondo prays that the Court the grant his motion to dismiss in its entirety.

Respectfully submitted,

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**
State Bar No. 02883500
tbrandt@fhmbk.com
**LAURA O'LEARY**
State Bar No. 24072262
loleary@fhmbk.com
**CHRISTOPHER D. LIVINGSTON**
State Bar No. 24007559
clivingston@fhmbk.com
**CHRISTOPHER BRANDT**
State Bar No. 24095984
cbrandt@fhmbk.com

**FANNING HARPER MARTINSON BRANDT & KUTCHIN, P.C.**
A Professional Corporation
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT PEDRO "PETE" ARREDONDO**

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October 2024, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys of record.

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**