**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

|  |  |  |
|---|---|---|
| JAVIER CAZARES, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 2:24-cv-00045-AM |
| JUAN MALDONADO, an individual; et al., | § § | |
| Defendants. | § § § § | |

**DEFENDANT MOTOROLA SOLUTIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Motorola Solutions, Inc. ("Motorola") moves the Court to enter summary judgment under Federal Rule of Civil Procedure 56 on all causes of action Plaintiffs bring against Motorola.  As set forth below, Plaintiffs do not have and/or have not disclosed any expert evidence required to support their product liability claims against Motorola, making summary judgment appropriate.  Further, Plaintiffs have not met their burden to establish a genuine dispute of material fact for either of their claims (failure to warn or manufacturing defect) against Motorola.  Indeed, there is no evidence to support a single element of Plaintiffs' claims.  Accordingly, Motorola respectfully requests that the Court grant summary judgment in its favor on all of Plaintiffs' claims.

## I.    INTRODUCTION

Plaintiffs assert claims against Motorola arising out of the horrific events that unfolded on May 24, 2022 at Robb Elementary in Uvalde, Texas (the "Incident").[1]  From the outset, the claims asserted

---

[1] For the purposes of this motion, a detailed recitation of the Incident and underlying facts is unnecessary.

against Motorola have been vague, and no evidence has been provided to support them.  Although the case has been pending for almost two years, Plaintiffs have presented no evidence to satisfy their summary judgment burden and support their allegations against Motorola.  Nor have Plaintiffs conducted any discovery relating to Motorola:  no written discovery, no document request, and no depositions.  More time will not cure this lack of evidence, however, as there is no evidence to support Plaintiffs' product liability claims.  Accordingly, summary judgment should be granted in Motorola's favor on all causes of action.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      MOTOROLA'S RADIO SYSTEM IN UVALDE

In the early 2000s, police and sheriff departments in the Middle Rio Grande area were facing radio-coverage problems.[2]  When law enforcement officers moved away from urban areas, there were large swaths of land where there was little to no radio coverage.[3]  To try to improve rural coverage and radio capabilities, the Middle Rio Grande Development Counsel ("MRGDC")[4] began a project to improve its radio system in 2004 or 2005.[5]  Through a grant from the Department of Homeland Security, MRGDC received approximately $1–2 million in federal funding and used those funds to purchase radio system components from Motorola for roughly $3 million total (a small budget for any radio system).[6]  The goal for this improvement to the system was to increase wide-area coverage for

---

[2] *See* Exhibit 1 at ¶¶ 4–5 (Declaration of Clay Cassard); Exhibit 2 at ¶ 5 (Declaration of Malcolm Forrest Anderson).

[3] *See* Ex. 1 at ¶ 5; Ex. 2 at ¶ 5.

[4] The MRGDC serves a 15,000 square mile area serving nine counties including Uvalde County. *See* Ex. 2 at ¶ 4.

[5] *See* Ex. 2 at ¶ 6.

[6] *See* Ex. 2 at ¶ 6; Ex. 1 at ¶ 3.  Along with the system, Motorola supplied radios and some other associated hardware to MRGDC (collectively, the "radio system").  *See* Ex. 1 at ¶¶ 3–4; Ex. 2 at ¶ 10.

rural areas in the Middle Rio Grande area where service was problematic.[7]  The enhanced radio system became operational by early 2007 and is the same radio system that was in place during the Incident.[8] The newly designed radio system still did not cover every square foot of the Middle Rio Grande area, but coverage significantly improved.[9]

Notably, the radio system was not designed, tested, or guaranteed for in-building performance.[10]  Also, importantly, the contract between MRGDC and Motorola did not include any coverage requirements or guarantees for in-building use; this was not consistent either with MRGDC's needs (to enhance rural coverage) or the funds available for the radio system.[11]  This does not mean that the radio system would not or could not work when a user is inside of a building.[12]  Rather, it just means that when the radio system was designed and sold, from the perspective of both Motorola and MRGDC, there was no expectation that in-building operability would be guaranteed (nor was it even tested).[13]  To guarantee in-building coverage, the radio system would have needed far more equipment, including more antennas and in-building repeaters to amplify the signal inside buildings— but there were no funds for any such equipment nor a desire to spend scarce resources to guarantee in-building coverage.[14]  Millions of dollars would have been required to enhance the reliability of in-building transmission across the nine counties MRGDC served, but there were no funds for any such

---

[7] *See* Ex. 1 at ¶¶ 4, 6; Ex. 2 at ¶¶ 6–7.

[8] *See* Ex. 2 at ¶¶ 12, 15.

[9] *See* Ex. 1 at ¶ 6; Ex. 2 at ¶ 8.

[10] *See* Ex. 1 at ¶¶ 7–8; Ex. 2 at ¶¶ 11, 14.

[11] *See* Ex. 1 at ¶¶ 7–9; Ex. 2 at ¶¶ 11, 14.

[12] *See* Ex. 1 at ¶ 8.

[13] *See* Ex. 1 at ¶ 8; Ex. 2 at ¶ 14.

[14] *See* Ex. 1 at ¶ 9.

equipment nor a desire to spend scarce resources to guarantee in-building coverage.[15]  In short, it was the understanding of both Motorola and MRGDC that the radio system was designed to enhance coverage in rural areas, but it was *not* designed, much less guaranteed, to provide consistent interior or in-building coverage.[16]

Due to a lack of funding, most of the money that has been spent on the radio system since it was initially installed two decades ago has been to maintain the system—i.e., simply to keep it operational.[17]  No funds were available or expended toward in-building coverage.[18]  Thus, it was not surprising to anyone—including local law enforcement and first responders—that the radio system did not have a consistently strong signal inside Robb Elementary on the day of the Incident.[19]  Any limitations in the radio system's coverage were the result of budgetary constraints and the geographic realities of the region rather than any defect in the equipment Motorola provided.[20]

## B.    PROCEDURAL HISTORY

On May 24, 2024, Plaintiffs filed their Original Complaint against, amongst others, Motorola alleging a variety of causes of action arising out of the tragic events that unfolded during the Incident.[21]  On July 8, 2024, Plaintiffs filed their Amended Original Complaint, and the live pleading in this

---

[15] *See* Ex. 1 at ¶ 9.

[16] *See* Ex. 1 at ¶¶ 6–7; Ex. 2 at ¶¶ 14–15.

[17] *See* Ex. 1 at ¶ 10; Ex. 2 at ¶¶ 12–13.

[18] *See* Ex. 1 at ¶ 11.

[19] *See* Ex. 1 at ¶ 11; Ex. 2 at ¶¶ 8, 14–15.

[20] *See* Ex. 2 at ¶ 15.

[21] *See generally* ECF No. 2 (Plaintiffs' Original Complaint).

matter.[22]  On July 29, 2024, Motorola timely filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint.[23]

Although these cases have been pending for nearly two years, Plaintiffs have failed to conduct any discovery.  Plaintiffs have not served any discovery requests on Motorola and have not noticed or taken any depositions in this matter.  Nor have they disclosed or designated any experts to support their claims.  Because nearly two years have passed and Plaintiffs have not conducted any discovery or produced any evidence to create a genuine dispute of material fact, Motorola now submits this motion for summary judgment asking the Court to grant summary judgment in its favor on all of Plaintiffs' claims.

### III.    ARGUMENTS AND AUTHORITIES

#### A.    GOVERNING LAW

This Court has jurisdiction over Plaintiffs' state law claims in this case under 28 U.S.C § 1367 (supplemental jurisdiction). [24]  Plaintiffs allege two causes of action against Motorola—product liability under a failure to warn (marketing defect) theory and product liability under a manufacturing defect theory.[25]  Both of these causes of action are state law claims that sound in tort.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000).  When sitting in diversity or exercising supplemental jurisdiction, federal courts must apply state substantive law to state law claims because "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Federal diversity or

---

[22] *See generally* ECF No. 34 (Plaintiffs' First Amended Complaint).

[23] *See generally* ECF No. 49 (Defendant Motorola Solutions, Inc.'s Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint).

[24] ECF No. 34 at ¶ 27.

[25] ECF No. 34 at ¶¶ 424, 434.

supplemental jurisdiction "provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426 (1996).

Because this Court is sitting in Texas and exercising supplemental jurisdiction over Plaintiffs' state law tort claims, it must apply Texas substantive law—including Texas product liability law—to determine whether Motorola is entitled to summary judgment on Plaintiffs' claims.

### B.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party "need only point out the absence of evidence supporting the nonmoving party's case" and "need not produce evidence negating the existence of a material fact." *Latimer v. Smithkline & French Lab'ys, a Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir. 1990).  In contrast, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 requires the nonmoving party "to go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue at trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Summary judgment is proper when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322–23.

Thus, summary judgment is mandated when Plaintiffs raise no genuine issue of material fact after "adequate ***time*** for discovery" has passed. *Id.* at 322 (emphasis added).  As the Fifth Circuit has observed, "[t]his is a very different animal from 'adequate discovery.'" *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 138 n. 21 (5th Cir. 1987).  Courts have repeatedly held that

-6-

summary judgment is proper when plaintiffs produce no evidence after sufficient time for discovery has passed.  *See id.* (holding that summary judgment is proper for lack of evidence when "over one year [has] passed from the time [plaintiff] filed suit"); *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1028 (5th Cir. 1983) (affirming summary judgment after plaintiff "failed to diligently and timely engage in discovery"); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755–56 (5th Cir. 2005) (affirming summary judgment after plaintiff "engaged in no discovery until the last days of the allotted period" because "Rule 56 does not require that *any* discovery take place before summary judgment can be granted") (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990)) (emphasis in original).

Where, as here, Plaintiffs have had ample opportunity to develop their case yet failed to partake in *any* discovery and thus have failed to produce *any* evidence creating a genuine dispute of material fact, summary judgment is proper.

### C.   NO EVIDENCE EXISTS TO SUPPORT THE PRODUCT LIABILITY CLAIMS AGAINST MOTOROLA.

Plaintiffs have no evidence to support even a single required element of their product liability claims, much less evidence to support (as they must) *all* of the required elements.  Moreover, Plaintiffs' product liability claims are directly undermined by summary judgment evidence.

### 1.   Plaintiffs' Product Liability Claims Fail Because They Are Unsupported by Expert Testimony.

Under Texas law, Plaintiffs must provide expert testimony to identify a specific defect (either a manufacturing or design defect) with the radio system to prove their product liability claims, and to show that the specific defect caused Plaintiffs' injuries.  *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42–43 (Tex. 2007) ("If juries were generally free to infer a product defect and injury causation from an accident or product failure alone, without any proof of the specific deviation from the design that caused the accident, expert testimony would hardly seem essential.  Yet we have repeatedly said

otherwise."); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (holding that expert testimony was required to establish causation in product liability case, because "[a] lay juror's general experience and common knowledge do not extend to whether design defects such as those alleged in this case caused releases of diesel fuel during a rollover accident"); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (holding, in a case where plaintiff alleged and the jury found design, manufacturing, and marketing defects, that "[i]n all of these [prior] cases, it was not enough that a vehicle accelerated when claimants swore they had done nothing.  Instead, we have consistently required competent expert testimony and objective proof that a defect caused the acceleration. . . . These requirements are not peculiar to unintended acceleration cases.").

To date, Plaintiffs have not designated or presented any expert testimony in support of their product liability claims.  Accordingly, Plaintiffs have failed to identify any expert to present evidence of a specific defect or causation to support their product liability claims.  Thus, summary judgment on *both* Plaintiffs' product liability claims is proper.

### 2.    <u>Plaintiffs Have Not Marshaled Evidence to Meet Their Burden on Any of Their Claims Against Motorola.</u>

Even if the Court were to find that Plaintiffs could overcome the hurdle caused by their lack of expert evidence, summary judgment is still appropriate because Plaintiffs have failed to meet their burden of providing evidence to support any of the elements of their product liability claims.  Under Texas law, a product liability claim is established by proving a product is "unreasonably dangerous because of a defect in marketing, design, or manufacturing."  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).  The "law requires more than finding an undifferentiated 'condition' that renders the product unreasonably dangerous;" rather, a specific defect must be proven.  *Ledesma*, 242 S.W.3d at 42.

As a threshold matter, Plaintiffs fail to identify *any* specific defect in Motorola's radio system.

Instead, they allege a general defective condition—i.e., Plaintiffs assert that Motorola's radio system was defective but fail to state how or why that is the case.[26]   Such general allegations—especially with no substantiating evidence—will not suffice to survive summary judgment.   Further, Plaintiffs have not shown the specific evidence necessary to prove the required elements of their manufacturing-defect and marketing-defect claims.

> **(a)   No Evidence Exists to Support Plaintiffs' Manufacturing-Defect Claims.**

Motorola is entitled to summary judgment on Plaintiffs' manufacturing-defect claims because Plaintiffs have not met their burden of producing evidence in support of the essential elements of those claims.   To establish a manufacturing-defect claim, Plaintiffs must show: (1) a product "deviate[s] from its specifications or planned output in a manner that renders the product unreasonably dangerous," (2) "the product was defective when it left the manufacturer," and (3) "the defect was a producing cause of the plaintiff's injuries." *Ledesma*, 242 S.W.3d at 41–42.   The first element requires proof of a "specific deviation from design" to demonstrate the defect is a manufacturing defect, as opposed to a design defect. *Id.* at 42–43; *see Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("A manufacturing defect exists if a product does not conform to the design standards and blueprints of the manufacturer, and the flaw makes the product more dangerous and therefore unfit for its intended or reasonably foreseeable uses.").   The second element requires proof that the product reached the user "without substantial change in the condition in which it is sold." *Grinnell*, 951 S.W.2d at 426 (quoting Restatement (Second) of Torts § 402A (1965)).   Finally, to be a producing cause, the defect must be "a substantial cause of the event in issue" and "must be a but-for cause, namely one without which the event would not have occurred."

---

[26] *See* ECF No. 34 at ¶¶ 423–40.

*Ledesma*, 242 S.W.3d at 46.  Plaintiffs have no evidence to support *any* of these elements, much less *all* of them.

As an initial matter, Plaintiffs have failed to identify what the supposed manufacturing defect is.  Rather, Plaintiffs assert conclusory allegations that Motorola's products "deviated in their construction or quality from the specifications or planned output in a manner that rendered them unreasonably dangerous" but have failed to identify what deviations or product specifications they are referencing. [27]  Plaintiffs have no evidence nor have they sought discovery regarding the design specifications of the Motorola radio system used during the Incident or that the Motorola radio system used during the Incident deviated from its specifications, planned output, or was otherwise defective. *See Garrick v. Autoliv ASP, Inc.*, No. 14-17-00818-CV, 2018 WL 3385159, at *5 (Tex. App.— Houston [14th Dist.] July 12, 2018, pet. denied) (mem. op.) ("Without evidence of the specifications or planned outputs regarding her vehicle's steering, acceleration, airbags, and seatbelts, [the plaintiff] cannot establish the deviations required of her claimed manufacturing defects.").  There is likewise no evidence that any of these vaguely alleged (and factually unsupported) deviations "render[ed] the [radio system] unreasonably dangerous." *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999); *see Benavides*, 189 S.W.3d at 881.

Even if Plaintiffs disclosed evidence of a defect (which they have not), they have not shown any evidence that the radio system was "defective when it left" Motorola's hands.  *See Ledesma*, 242 S.W.3d at 42.  Plaintiffs have "presented no evidence of the condition of the [radio system,] and thus no evidence that the [radio system] was in defective condition at the time that it left [Motorola]." *See Carpenter v. Campbell Hausfield Co.*, No. 01-13-00075-CV, 2014 WL 1267008, at *6 (Tex. App.— Houston [1st Dist.] Mar. 27, 2014, no pet.) (mem. op.).  This provides yet another ground for summary

---

[27] *See* ECF No. 34 at ¶ 436.

judgment. *See, e.g.*, *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 602 (Tex. 2004) (granting summary judgment when there "is no more than a scintilla of evidence that a manufacturing defect was present when the truck left the manufacturer").

Plaintiffs have produced no evidence that a defective radio system, much less a specific manufacturing defect, was the producing cause of Plaintiffs' injuries. To establish causation, Plaintiffs must show that the manufacturing defect was "a substantial cause of the event in issue" and "a but-for cause." *Ledesma*, 242 S.W.3d at 46; *see also Mack Trucks*, 206 S.W.3d at 582 (explaining "[t]o survive summary judgment on their theory that a defect in the tractor's fuel system was the cause of the fire," the plaintiff needed to present evidence not only of a fuel leak, but also that "(1) the diesel fuel leaked because of one or more of the alleged defects, and (2) the leak caused by the defect was the ignition point for the fire"). No such evidence exists here.

And even if Plaintiffs could provide evidence showing a manufacturing defect caused the radio system to stop working during the Incident, Plaintiffs still cannot show and have not shown the defect was a producing cause of their injuries. That is because any alleged defect was not the cause in fact of Plaintiffs' injuries. *See BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 541 (Tex. 2011) (explaining "[a] producing cause must be a cause-in-fact"). A defective, non-working radio system (of which there is no evidence) would be, at most, a preliminary condition in the course of events which made possible Plaintiffs' injuries. However, causation cannot be "established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible." *Union Pump Co. v. Allbritton* 898 SW.2d 773, 776 (Tex. 1995) (applying this principle to both proximate cause and producing cause), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007); *see also Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471–72 (Tex. 1991) (applying the Restatement of Torts definition of "legal cause" to product defect and negligence claims and

stating that "[t]he word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause. . . .").

Indeed, in analyzing the very facts of the Incident, a Texas appellate court recently confirmed that "the shooter's actions proximately caused the appellants' injuries and the use or condition of the radios was too attenuated from that cause" to establish legal causation. *Barrera v. Uvalde Cnty.*, No. 04-24-00461-CV, 2026 WL 517516 at *12 (Tex. App.—San Antonio Feb. 25, 2026, no pet. h.). Although *Barrera* arose in a governmental immunity context, the court's causation analysis applies with equal force here because it employed the same standards governing tort claims generally— holding that "[t]he requirement of causation is more than mere involvement," and that "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* at *10 (quoting *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (citing *Union Pump Co. v. Allbritton* 898 SW.2d at 776)); *see also Smith v. Tarrant County*, 946 S.W.2d 496, 501 (Tex. App.—Fort Worth 1997, writ denied) (holding that a malfunctioning police flashlight, which hampered the officer's ability to search plaintiff's home, did not proximately cause plaintiff's subsequent sexual assault by an intruder who remained hidden inside).

Thus, Plaintiffs have no evidence on a single element of their manufacturing-defect claims, requiring summary judgment against them on this claim.

### (b)    No Evidence Exists to Support Plaintiffs' Marketing-Defect Claims.

Plaintiffs' marketing-defect claims also cannot survive summary judgment. For a marketing-defect claim, Plaintiffs must show (1) Motorola failed "to warn of a product's potential dangers," (2) Motorola had a duty to warn, (3) "the lack of adequate warnings or instructions render[ed] an otherwise adequate product unreasonably dangerous," and (4) the failure to warn was a producing cause of the injury. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *see also Ranger*

*Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  A defendant's duty to warn is evaluated at the time of the marketing—"[a] product supplier is not liable for a failure to warn of dangers that were unforeseeable at the time the product was marketed." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 384 (Tex. App.—Tyler 2009, pet. denied).  Moreover, a duty to warn does not arise "when the risks associated with a particular product are matters 'within the ordinary knowledge common to the community'"—the duty "applies only to hazards of which the consumer is unaware." *Shears*, 911 S.W.2d at 382.  Whether a product's risks are "common knowledge" is usually "a question of law, not fact." *Gish*, 286 S.W.3d at 313 & n.6.

Plaintiffs have produced no evidence to support any these elements.  *First*, Motorola had no duty to warn Plaintiffs of risks that the radio system might have restricted transmission capabilities inside buildings because the risk of harm (i.e., harm from a school shooting caused by the intervening criminal act of the shooter) was not foreseeable.   While a manufacturer has a duty of reasonable care to users of their product and to those in the "foreseeable zone of danger," this duty is limited to preventing "physical harm that [the manufacturer] should reasonably foresee could result from the use of the product for its intended purpose." *Starr v. Koppers Co.*, 398 S.W.2d 827, 831 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.).  Here, the physical harm was not reasonably foreseeable as no reasonable person (or manufacturer) would anticipate the horrific events that unfolded in Uvalde on that day—especially in the early 2000s when Motorola sold and "marketed" the radio system to MRGDC.  Thus, Motorola owed no duty to Plaintiffs.  Furthermore, as a matter of law, it is common knowledge, especially among people working in industries that utilize radios such as law enforcement

agencies, that there is a risk radio equipment will not transmit in certain circumstances.[28] *See Gish*, 286 S.W.3d at 313 & n.6 (explaining that the common knowledge inquiry is a legal determination regarding whether "an average user of the product would recognize the risks entailed by the use of the product"). Indeed, it was common knowledge among Uvalde law enforcement officers that the radio system had certain known limitations inside buildings.[29] *Second*, Plaintiffs have not shown that the lack of warning rendered the use of the radio system "unreasonably dangerous" or that a warning would have somehow made them safer. *Third*, no evidence exists that a failure to warn was the producing cause of Plaintiffs' injuries. Plaintiffs' injuries were not caused by the use of Motorola's radio system or by any inherent risk of the radio system, but rather by a subsequent chain of unfortunate intervening events. *See* Section III.C.2.a (explaining the alleged radio system issues were not a cause in fact).

Thus, the Court should grant summary judgment on Plaintiffs' marketing-defect claims.

### (c) Plaintiffs' Own Complaint Undermines Causation.

Beyond the lack of evidence supporting either product liability claims, Plaintiffs' own Complaint exculpates Motorola from any causal role in their injuries. The very first line of the Complaint characterizes the Incident as "the single greatest failure of law enforcement . . . in American history."[30] Plaintiffs then quote former U.S. Attorney General Merrick Garland, who stated that "had law enforcement agencies followed generally accepted practices . . . lives would have been saved and

---

[28] This is similar to the common knowledge that cell phones might not transmit or work in certain circumstances. For example, when someone tries to use their cell phone inside a sporting arena or another building not equipped to provide cellular service, it is common knowledge that they may not have a strong or reliable signal. The same is true for radio systems.

[29] *See* Ex. 2 at ¶¶ 8, 11.

[30] ECF No. 34 at ¶ 1.

people would have survived."[31]   Indeed, the Complaint is replete with statements that exculpate Motorola and instead assign all blame—beyond that attributable to the shooter—to law enforcement.[32] By Plaintiffs' own admissions, responsibility for the delayed response to the Incident falls squarely on law enforcement officials, not Motorola.

Plaintiffs' own admissions further undermine any claim that an alleged defect in Motorola's radio system was a producing cause of their injuries.  In fact, the Complaint is awash with allegations demonstrating that law enforcement officers successfully communicated via radio throughout the Incident.  In at least eleven separate instances, Plaintiffs quote successful radio communications between law enforcement officers.[33]  Notably, Plaintiffs allege that "[t]he UPD **broadcast channel was accessible to all law enforcement in the area**, including UCISD-PD, county, TXDPS, and federal officers" and that "some or all UCISD-PD and TXDPS officers responding to the scene heard this broadcast and/or the others alleged herein on the UPD channel."[34]  Thus, Plaintiffs' own allegations establish that the radio system was operational (within understood limitations) and that law enforcement officers across multiple agencies were able to receive and transmit communications throughout the duration of the Incident.  This pattern of successful radio communications, as alleged by Plaintiffs themselves, demonstrates that Motorola's radio system was functioning throughout the Incident and that any alleged defect in the system was not a but-for cause of Plaintiffs' injuries.  *See*

---

[31] ECF No. 34 at ¶ 14.

[32] *See* ECF No. 34 at ¶¶ 7, 97, 133, 385 ("The 376 officers who arrived at Robb Elementary on May 24, 2022, abandoned [their] training. In doing so, they turned the ongoing lockdown into a death trap. . . . Students and teachers' survival would depend on the speed and effectiveness of the law enforcement response. . . . Responding law enforcement officers *have the sole power* to determine how long locked down students and teachers will be confined with the shooter. . . . If these [TXDPS and UCISD-PD] Defendants, or any one of them, had acted to protect the reasonable safety of the Child Plaintiffs, one or more of the Child Plaintiffs would not have died.") (emphasis added).

[33] *See* ECF No. 34 at ¶¶ 176, 189, 202, 246, 245, 248, 252, 254, 273, 303, 327.

[34] ECF No. 34 at ¶ 178.

*Ledesma*, 242 S.W.3d at 46 (requiring that a producing cause be "a but-for cause, namely one without which the event would not have occurred"). Indeed, aside from the causes of action and the paragraphs acknowledging ***successful*** radio communications, Plaintiffs' Complaint fails to cite a single fact about Motorola's radio system—let alone any allegation that the system malfunctioned on the day of the Incident.[35] Thus, summary judgment is appropriate, as Plaintiffs have presented no evidence that raises a genuine dispute of material fact.

## IV.    CONCLUSION & PRAYER

Plaintiffs have failed to offer evidence in support of ***any*** of the required elements on ***all*** of their claims against Motorola. For these reasons, Motorola asks the Court to grant this Motion and sign an order for summary judgment on ***all*** Plaintiffs' claims against it.

---

[35] *See generally* ECF No. 34.

-17-

Dated: May 1, 2026                                  JONES DAY

By:  */s/ Peter D. Laun*
    Peter D. Laun, Bar No. 24108952
    pdlaun@jonesday.com
    Joseph C. Van Asten, Bar No. 24075598
    jcvanasten@jonesday.com
    Tatum Lowe Kowalski, Bar No. 24131471
    tkowalski@jonesday.com
    Jonathan M. Khouzam, Bar No. 24149129
    jkhouzam@jonesday.com

2727 North Harwood Street
Dallas, TX  75201.1515
Telephone:    +1.214.220.3939
Facsimile:    +1.214.969.5100

Attorneys for Defendant
Motorola Solutions, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, I caused the foregoing to be electronically filed with the Clerk of Court for the U.S. District Court, Western District of Texas, by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Jonathan M. Khouzam*