**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

|  |  |  |
|---|---|---|
| JAVIER CAZARES, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 2:24-cv-00045-AM |
| JUAN MALDONADO, an individual; et al., | § § | |
| Defendants. | § § § § | |

**APPENDIX TO DEFENDANT MOTOROLA SOLUTIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**INDEX OF EXHIBITS**

| Exhibit # | Exhibit Description |
|:---:|:---|
| 1 | Declaration of Clay Cassard |
| 2 | Declaration of Malcolm Forrest Anderson |

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | | |
|---|---|---|
| JAVIER CAZARES, et al., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | No. 2:24-cv-00045-AM |
| | § | |
| JUAN MALDONADO, an individual, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**<u>DECLARATION OF CLAY CASSARD</u>**

1.  My name is Clay Cassard.  I am over 18 years of age, of sound mind, and capable of making this declaration.  The facts stated in this declaration are true and are based on my personal knowledge, including my on-the-job observations, the knowledge that I gained through performing my professional responsibilities, and my first-hand experiences.

2.  I am employed by Motorola Solutions, Inc. ("Motorola").  I currently reside in Canyon Lake, Texas and am the Vice President for Global Enterprise Strategic Sales.  I have been employed by Motorola since 2005—for over 20 years.  I have either been directly responsible for, or otherwise regularly involved with, the radio system in the Middle Rio Grande area from the time I started at Motorola until 2023.  Because of that experience, I am very familiar with that system.

3.  In the early-to-mid 2000s, Motorola sold certain components of a radio system to the Middle Rio Grande Development Council ("MRGDC") for approximately $3 million.  This is considered a relatively small budget for a radio project; a full radio system would typically cost $20–30 million.

4.  This new equipment was used to try to enhance the existing radio system that was

in use in the Middle Rio Grande service area at the time. However, many original components of the system, such as radio towers that were already in place at the time, were used and were not replaced or supplemented due to budgetary limitations. Rather, the new system components were added onto the existing towers.

5. MRGDC purchased the new radio system components to address significant radio-coverage problems it was facing at the time. In the Middle Rio Grande area, when law enforcement officers would go out of more urban areas such as towns and cities into more rural areas, there was little or no radio coverage in those areas because of limited numbers of towers and locations, as well as relatively old radio system infrastructure.

6. It was the express understanding of both Motorola and MRGDC at the time that the purpose for making these improvements to the existing radio system was to provide enhanced coverage for rural areas of the counties served by the Middle Rio Grande system. While the upgraded system did not cover every square foot of the Middle Rio Grande area, the coverage in more rural areas significantly improved as compared to the existing system.

7. When the new system components were installed, MRGDC did not request any coverage guarantees, so Motorola did not provide any. Rather, MRGDC conducted its own "drive-testing" to confirm that the system was operational. "Drive-testing" is not a coverage guarantee but rather consists of driving around in a vehicle and confirming that the system is operational at various locations within the coverage area.

8. Because the intended purpose of the radio system was to enhance coverage for rural areas, the system was not designed, tested, or guaranteed for in-building coverage. This does not mean that the radio system would not or could not work when a user is inside a building. Rather, it means that when the radio system was designed and sold, from the perspective of

- 2 -

both Motorola and MRGDC, there was no expectation that in-building operability would be guaranteed or would exist in any particular circumstance.

9.      To guarantee in-building coverage, the radio system would have needed far more equipment, including more antennas and in-building repeaters to amplify the signal inside buildings where a signal was desired.  But there was no funding available for this, which would have cost millions of dollars.  Better in-building coverage would also require MRGDC to construct more, and closer, radio transmission towers, but there were no funds to build new towers, so the existing ones had to be used.

10.     Due to a lack of funding, most of the money that has been spent on the MRGDC radio system since it was initially installed two decades ago has been to maintain the system and keep it operational.   To the extent any upgrades were made, those upgrades were aimed at adding coverage throughout the Middle Rio Grande area, rather than to add in-building operability.  That means that during the tragic events that took place at Robb Elementary on May 24, 2022, the radio system that was being used by law enforcement and first responders was essentially the same radio system that was put in place in Uvalde in the early 2000s to resolve the rural area coverage problems.

11.     MRGDC and local law enforcement were aware that the radio system was not designed or intended to provide guaranteed in-building coverage;  that was a purposeful choice by the MRGDC because it did not have sufficient funds to purchase the equipment necessary to provide such coverage.

My legal name is Steven Clay Cassard and my date of birth is 12/15/1978. My address

is 2862 Colleen Dr. Canyon Lake, Texas 78133. I declare under penalty of perjury that

the statements and facts in this Declaration are true and correct.


Executed in Comal County, State of Texas, on the 27 day of April, 2026.

Clay Cassard

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

JAVIER CAZARES, et al.,                    §
                                           §
            Plaintiffs                     §
                                           §
v.                                         §        No. 2:24-cv-00045-AM
                                           §
JUAN MALDONADO, an individual, et al.,     §
                                           §
            Defendants.                    §
                                           §
                                           §

### DECLARATION OF MALCOLM FORREST ANDERSON

1.      My name is Malcolm Forrest Anderson, I am over 18 years of age, of sound mind, and capable of making this declaration.  The facts stated in this declaration are true and are based on my personal knowledge, including my on-the-job observations, the knowledge that I gained through performing my professional responsibilities, and my first-hand experiences.

2.      I graduated from Texas A&M University in 1981, where I was in the Corps of Cadets.  Beginning in 1992, I worked for the Middle Rio Grande Development Council ("MRGDC") for approximately 25 years, when I retired from MRGDC.  I currently work for the Uvalde County Office of Emergency Management, whom I have worked for in various capacities for over 20 years, most recently as its Emergency Management Coordinator since 2022.

3.      I was initially hired by MRGDC as a 911 assistant and later became the 911 coordinator.  My work included responsibility for MRGDC's 911 systems (including radio systems) and, following the events of September 11, 2001, was expanded to include additional responsibilities.  Among other things, I was responsible for overseeing the development, installation, and maintenance of the MRGDC Regional Trunked Radio System that covered

- 1 -

the Middle Rio Grande Area (which included Uvalde County).

4.     Because of my experience, I am very familiar with the MRGDC radio system.  In general terms, the MRGDC radio system provides radio coverage for first responders in the counties it serves: Dimmit, Edwards, Kinney, La Salle, Maverick, Real, Uvalde, Val Verde, and Zavala counties, covering over 15,000 square miles across these nine counties.  The system uses antennas, repeaters, and a combination of cellular and satellite connectivity to provide redundancy and reliable radio coverage.  Radio signals from handheld or mobile units transmit a digital signal to a radio tower; that transmission is repeated by the radio system so that other users and/or dispatch receive it on handheld, console, or mobile units, which translate the digital signal back to an analog signal such that a voice comes out of the radio.

5.     By the early-2000s, the existing system (which had been in place for about three decades) faced a number of challenges.  Radio equipment, which was by then was in some cases two decades or more old, was failing, making the system less reliable than desired.  Additionally, the existing towers and transmission equipment were not sufficient to provide reliable coverage in rural areas located a significant distance from the towers (particularly where geological features such as hills interfered with transmission capabilities).

6.     In 2004 or 2005, MRGDC started implementing a project designed to significantly improve radio communications across the region, which included replacing antiquated equipment.  Through a grant from the Department of Homeland Security, MRGDC received approximately $1-2 million in federal funding to use to improve the radio system.  While this was nowhere near enough money for a comprehensive system upgrade, it did allow MRGDC to enhance the transmission capability and reliability of the system.

7.     Working within limits of the funds available, MRGDC purchased from Motorola

Solutions, Inc. ("Motorola") certain equipment that MRGDC had the funds to purchase. The primary focus of the project was improving transmission capability to ensure that law enforcement officers in the rural areas were serviced by the MRGDC system and could communicate with dispatch or backup units. Before upgrading the system, service in rural areas was not reliable because the radio signal was not strong enough to reach many of those areas. The system MRGDC and Motorola put together starting around 2005 was designed to—and did—materially improve communications in those areas, enhancing officer safety. This system in Texas and the border region was state-of-the-art for a public safety radio system at that time.

8.     Neither MRGDC nor the counties it served could afford to construct new towers, so existing towers were used when the system enhancements were installed. The distance between most towers was approximately 30 to 50 miles. The geographic challenges of the area meant that there were inherent limitations in coverage, and even today, there are still areas that do not have a strong radio signal due to geography and limitations in the number and locations of towers. This is an inherent and well-known limitation in the system that is not due to any defect or fault of the radio system itself. Like cellular telephones, radio systems are limited by signal strength. Transmission and receiving capabilities of public safety radio systems, including the MRGDC system, are also limited by the availability of public safety VHF frequencies.

9.     I worked directly with Motorola on the design and purchase of the radio system enhancements, and I was responsible for overseeing the implementation of the system, working with Motorola's technical personnel. The radio system was installed in stages. And at every stage, we made enhancements to the existing system within our budget constraints.

10.     The equipment purchased from Motorola was a comprehensive package that was intended to improve the infrastructure to run a VHF trunked system (i.e., a system that transmits and receives digital signals through a central hub). This included improving and replacing equipment at towers, installing new shelters for equipment, adding repeaters to enhance transmission capability, and adding new radio consoles. Several thousand Motorola radios were also ordered, including both mobile units for vehicles and handheld units. Some of those radios are still being used today. Motorola was the only company that bid on the project that had the capability to meet the requirements for the project.

11.     As noted above, the goal of the radio system was to reach remote areas and enable communication with dispatch so that officers would not be in peril in rural areas where the signal strength was insufficient before the system was enhanced. This was understood by both MRGDC and Motorola. I was aware at the time that in-building coverage could be enhanced. But that would have required significant amounts of equipment and testing, all of which is very expensive. However, MRGDC simply did not have the funds to purchase, install, and test such systems. MRGDC used the limited funds it had available to enhance transmission capability across the nine counties MRGDC serves. MRGDC did not ask Motorola to analyze, supply and install equipment for, or test for, in-building coverage, which is significantly affected by building materials. For example, concrete, steel, and wood have varying characteristics that significantly limit radio wave penetration. Similarly, materials, such as "E-Glass", which is designed to block out heat penetration through windows, also blocks radio waves. This is why radios that could transmit or receive radio signals outside of buildings would not necessarily have the same capabilities inside of buildings.

12.     The initial stage of the enhanced radio system became operational by approximately

- 4 -

2007. From then until the present, additional upgrades occurred from time-to-time, including replacing signal repeaters with newer and different technology. A multi-million-dollar upgrade that was necessary to keep the system functional. Motorola was involved with supplying and configuring those repeaters. MRGDC was always constrained by the limited funds available to purchase new equipment.

13. Although Motorola can provide system maintenance for a fee, MRGDC did not sign a maintenance contract with Motorola. Government funding for maintenance of the radio system was not always available, but MRGDC maintained the infrastructure the best it could given its budgetary constraints and limited resources.

14. Simply put, the MRGDC radio system was not designed or tested for in-building coverage. MRGDC and system users were well aware that building materials can block radio signals, making transmitting and receiving signals within buildings uncertain because the ability for a radio communication to be transmitted or received depends on signal strength, which in turn is affected by distance from towers, equipment capability, and geographic and physical impediments.

15. The MRGDC radio system (including the Motorola equipment incorporated in it) performed as designed from the time it was implemented through the present. It provided enhanced reliability and rural-area transmission capability essential for the region. To my knowledge, any limitations in coverage (including limitations on in-building coverage) were attributable to funding constraints and geographic and other physical transmission/reception impediment challenges, including building materials as stated above, and I am not aware of any defects in the radio equipment itself.

- 5 -

- 6 -

I declare under penalty of perjury that the statements and facts in this Declaration are

true and correct.

Executed in Uvalde County, State of Texas, on the 21st day of April, 2026.

Malcolm Forrest Anderson